James Rodney FLENNIKEN and Betty Flenniken, Petitioners,

v.

LONGVIEW BANK AND TRUST COMPANY, Respondent.

No. C–1759.

Supreme Court of Texas.

July 6, 1983.

Rehearing Denied Jan. 11, 1984.

Jerry L. Covington, Clifton L. Holmes, Longview, for petitioners.

Mobley, Green, Harrison & Gardner, William J. Gardner and Joe R. Green, Longview, for respondent.

McGEE, Justice.

Mr. and Mrs. James Flenniken instituted this suit against the Longview Bank & Trust Co. seeking damages for wrongful foreclosure and violation of the Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.41 *et seq.*[1] Based on the jury's finding that the Bank engaged in an unconscionable course of action in causing the sale of the Flennikens' property, the trial court rendered judgment that the Flennikens recover $25,974 treble damages, attorney's fees, and court costs. The court of appeals reversed the trial court's judgment in part, holding that the Flennikens were not "consumers" and were not entitled to recover treble damages or attorney's fees under the DTPA. 642 S.W.2d 568. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

On October 28, 1976, the Flennikens and Charles Easterwood entered into a mechanic's and materialman's lien contract, whereby Easterwood agreed to construct a residence on the Flennikens' property. In exchange for Easterwood's services, the Flennikens paid Easterwood $5,010 and executed a $42,500 mechanic's lien note, naming Easterwood as payee. This note was further secured by a deed of trust to the Flennikens' property, in which the Bank's vice-president, J.M. Bell, was named as trustee. On this same date, Easterwood assigned the Flennikens' note and his contract lien to the Bank in return for the Bank's commitment to provide interim construction financing.

Under the terms of the lien contract, Easterwood was to complete the Flennikens' residence by April 28, 1977. Between November 2, 1976, and January 7, 1977, the Bank made four disbursements of construction funds to Easterwood, totalling $32,000. Easterwood, however, later abandoned the contract after completing only 20 percent of the work. On December 6, 1977, after the Flennikens and the Bank failed to agree on what to do with the unfinished house, the Bank foreclosed on the property under the terms of the deed of trust.

The Bank does not challenge the jury's finding that foreclosure was an unconscionable course of action. Instead, the Bank argues that the Flennikens are not "consumers" as that term is defined in section 17.45(4) of the DTPA. We disagree.

■ It is clear that only a "consumer" has standing to maintain a private cause of action for treble damages and attorney's fees under section 17.50(a) of the DTPA. *Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382, 388 (Tex.1982); *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 538 (Tex.1981); *Riverside National Bank v. Lewis,* 603 S.W.2d 169, 173 (Tex. 1980). Section 17.45(4) defines a consumer as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." Under the DTPA, goods include "real property purchased . . . for use," Tex.Bus. & Com.Code Ann. § 17.45(1), and services include "services furnished in connection with the sale . . . of goods." *Id.* § 17.45(2). Section 17.45(4), however, only describes the class of persons entitled to bring suit under section 17.50; it does not define the class of persons subject to liability under the DTPA. The range of possible defendants is limited only by the exemptions provided in section 17.49. Section 17.50(a)(3), for example, allows a consumer to "maintain an action if he has been adversely affected by . . . any unconscionable action or course of action by *any person.*"[2]

In the instant case, the court of appeals recognized that the Flennikens were consumers to the extent they sought to acquire a house from Easterwood, as well as his services. The court of appeals, however, treated Easterwood's assignment of their

---

1. All references to the DTPA in this opinion pertain to the Act as it was written before the effective dates of the 1979 and 1981 amendments. *See* 1977 Tex.Gen.Laws, ch. 216, §§ 1–13, at 600–05; 1973 Tex.Gen.Laws, ch. 143, § 1, at 322–34.

2. "Person" is defined in section 17.45(3) as "an individual, partnership, corporation, association, or other group, however organized."

note to the Bank as a separate transaction in which the Flennikens did not seek or acquire any goods or services. According to the court of appeals, the Bank's unconscionable course of action did not occur in connection with the Flennikens' transaction with Easterwood, but in connection with Easterwood's transaction with the Bank. Thus, the court of appeals held that the Flennikens were not consumers as to the Bank because the purchase of the house and Easterwood's services did not form the basis of their complaint. 642 S.W.2d at 570.

■ This holding erroneously suggests that the Flennikens were required to seek or acquire goods or services *from the Bank* in order to meet the statutory definition of consumer, a contention we rejected in *Cameron v. Terrell & Garrett, Inc., supra*. Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status as a consumer under the DTPA. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d at 541; *accord Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168 (Tex.1983); *Stagner v. Friendswood Development Co.*, 620 S.W.2d 103 (Tex.1981) (per curiam). A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant. The only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d at 539.

■ Similarly, the fact that the Bank's unconscionable course of action occurred after the Flennikens and Easterwood entered into the contract for the sale of the house does not exempt the Bank from liability under the DTPA. Under section 17.50(a)(3) there is no requirement that the defendant's unconscionable act occur simultaneously with the sale or lease of the goods or services that form the basis of the consumer's complaint. *Cf. Leal v. Furniture Barn, Inc.*, 571 S.W.2d 864, 865 (Tex.1978). If, in the context of a transaction in goods or services, any person engages in an unconscionable course of action which adversely affects a consumer, that person is subject to

liability under the DTPA. Tex.Bus. & Com. Code Ann. § 17.50(a)(3); *see* D. Bragg, P. Maxwell & J. Longley, *Texas Consumer Litigation* 21 (2d ed. 1983).

■ The court of appeals erred in holding that the basis of the Flennikens' complaint was Easterwood's transaction with the Bank, rather than their transaction with Easterwood. From the Flennikens' perspective, there was only one transaction: the purchase of a house. The financing scheme Easterwood arranged with the Bank was merely his means of making a sale. The Bank's unconscionable act in causing the sale of the Flennikens' property and the partially built house arose out of the Flennikens' transaction with Easterwood. The Flennikens, therefore, were consumers as to all parties who sought to enjoy the benefits of that transaction, including the Bank. *Knight v. International Harvester Credit Corp.*, 627 S.W.2d at 389. Clearly, the Bank had no greater right to foreclose on the Flennikens' property than did Easterwood. If Easterwood had foreclosed his lien under these circumstances, and if a jury had found his actions to be unconscionable, there is no question that he would be subject to liability under the DTPA. The Bank—which wrongfully exercised a power it derived from Easterwood's transaction with the Flennikens—is subject to the same liability.

The Bank, however, also argues that the Flennikens are not consumers under our holding in *Riverside National Bank v. Lewis, supra*. Again, we disagree.

In *Riverside*, we held that money is not a good or service under the DTPA, and that one who seeks only money in a transaction is not a consumer under section 17.45(4). In *Riverside*, however, the *sole* basis of Lewis' complaint was the Bank's failure to lend him money as it had promised it would. The limited nature of his complaint was reiterated throughout our opinion:

In his transaction with Riverside Bank, Lewis sought *only* to borrow money in an effort to avoid repossession of his car.... Other than Lewis' payment for

the use of money, there was *nothing else* for which he paid or which he sought to acquire.

603 S.W.2d at 173 (emphasis added).

In this case, Lewis sought to borrow money: he sought *nothing else.*

*Id.* at 174 (emphasis added).

There is no evidence that he sought to acquire *anything other* than this use of money.

\*　　\*　　\*　　\*　　\*　　\*

... Lewis' *sole* complaint about the transaction concerned the Bank's failure to make him the loan.

*Id.* at 175 (emphasis added).

In this case, the Flennikens make no complaint as to the Bank's lending activities. Unlike Lewis, the Flennikens did not seek to borrow money; they sought to acquire a house. The house thus forms the basis of their complaint.

The judgment of the court of appeals is reversed. The judgment of the trial court awarding the Flennikens treble damages and attorney's fees under the DTPA is affirmed.

POPE, C.J., files dissenting opinion in which BARROW, CAMPBELL and WALLACE, JJ., join.

POPE, Chief Justice, dissenting.

I dissent for the reasons expressed in the opinion of the court of appeals.

BARROW, CAMPBELL and WALLACE, JJ., join in this dissenting opinion.