TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00070-CV







Coldwell Banker/ Richard Smith Realtors, Pat Van Hoy

and Gretchen A. Woellner, Appellants


v.



Joyce D. Kubala and Edward F. Kubala, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 95-13008, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 







 Appellees Joyce and Edward Kubala brought suit against appellants Coldwell
Banker/ Richard Smith Realtors ("Coldwell Banker"), Pat Van Hoy, and Gretchen A. Woellner
(collectively "appellants"), asserting violation of the Deceptive Trade Practices Act (the
"DTPA"), (1) fraud, and negligent misrepresentation. The case was tried to a jury, which found that
appellants violated the DTPA and made negligent misrepresentations to the Kubalas, and that
Coldwell Banker and Van Hoy committed fraud against the Kubalas. The jury also assessed
damages and attorney's fees. The district court rendered judgment in favor of the Kubalas. In
five issues, appellants challenge whether the Kubalas are consumers as a matter of law under the
DTPA and the legal and factual sufficiency of the evidence. We will reverse the district-court
judgment against Woellner for violation of the DTPA and for negligent misrepresentation, and
render judgment that the Kubalas take nothing against her. With respect to Van Hoy and Coldwell
Banker, we will reverse the district court's judgment against them based on fraud and negligent
misrepresentation and render judgment that the Kubalas take nothing by these claims. We will
remand the Kubalas' DTPA claim as to them to the district court for further proceedings to
determine whether Van Hoy and Coldwell Banker engaged in unconscionable conduct toward the
Kubalas.


BACKGROUND

 Van Hoy, a licensed real estate agent working with Coldwell Banker, entered into
an Austin Multiple Listing Service Residential Real Estate Listing Agreement ("Listing
Agreement") with Richard Relph. Pursuant to the Listing Agreement, Coldwell Banker agreed
to market Relph's house at an asking price of $435,000. If the house was sold to a qualified buyer
at an agreeable price and agreeable terms, Relph agreed to pay a 6% sales commission to
Coldwell Banker. 

 Coldwell Banker is a member of the Austin Multiple Listing Service (the
"Service"). Under the rules of the Service, any property listed by Coldwell Banker can be shown
and sold by any other agent who is also a member of the Service. If Coldwell Banker, as the
listing agent, lists and sells a property, it is entitled to the entire commission. However, if a
different agent makes the sale, Coldwell Banker keeps half of the commission as the listing agent
and pays the other half to the selling agent. 

 Van Hoy began to market Relph's house after the Listing Agreement was signed. 
Joyce Kubala, a licensed real estate agent associated with Hope Properties, a real estate company
unrelated to Coldwell Banker, saw that Relph's house was for sale and contacted Coldwell Banker
for information. Woellner, a licensed real estate agent working with Coldwell Banker, (2) showed
Mrs. Kubala the house and later mailed her additional information, including a form promulgated
by the Texas Real Estate Commission entitled "Information and Disclosure Regarding Real Estate
Agency Relationships." The form clearly disclosed that Coldwell Banker was Relph's agent, and
nowhere implied that either Coldwell Banker or Woellner was the Kubalas' agent. Mrs. Kubala
was interested in buying Relph's house and scheduled another appointment with Woellner for the
following Saturday so that her husband could see the property. In addition, she entered into a
buyer's agreement with Roger Lins, a real estate broker also with Hope Properties, to represent
her and her husband. Lins agreed to pay Mrs. Kubala 70% of the 3% commission he would
receive as the selling broker if the Kubalas' contract was accepted by Relph.

 Jerome Hudson was also interested in buying Relph's house and began to negotiate
with Relph to purchase the house. Hudson entered into a listing agreement with Coldwell Banker
to sell his own home conditioned on the event that he was able to purchase Relph's. Thus,
pursuant to Hudson's and Relph's listing agreements, Coldwell Banker would receive a
commission from Hudson if they sold his house, but only if Hudson also bought Relph's house.
In addition, if Coldwell Banker sold Relph's house to Hudson, it would receive a full 6%
commission from Relph. However, if the Kubalas purchased Relph's house, Coldwell Banker
would receive a 3% commission as the listing agent but would receive no commission from
Hudson, leaving Lins with a 3% commission as selling agent.

 On Saturday morning, Hudson offered $410,000 for Relph's house with a deadline
for acceptance of 5:00 p.m. that day. At 1:00 p.m. the same day, Woellner showed the Kubalas
Relph's house. After they viewed the house, the Kubalas met Woellner at Coldwell Banker's
offices and requested that Woellner prepare an offer to purchase the Relph property on their behalf
because Lins, their agent, was out of town. Although Woellner could have done so, she refused
because, with Lins as the selling broker and Mrs. Kubala as the selling agent, Woellner would
receive no compensation for her efforts. Woellner gave the Kubalas Van Hoy's phone number
so that they could submit their offer to Relph directly, but did not tell them that Van Hoy was then
physically present in Coldwell Banker's offices. The Kubalas testified that had they known Van
Hoy was there, they would have submitted their offer to him immediately. After they left,
Woellner told Van Hoy of the Kubalas' desire to make an offer on the Relph property. 

 The Kubalas attempted to reach Van Hoy that afternoon but were unsuccessful. 
In the early evening, Van Hoy told Relph that there were no additional offers on the house, and
Relph orally accepted Hudson's offer.

 The next morning, the Kubalas contacted Relph directly, and told him that they
were going to submit a written offer through Lins. Relph informed them that he had already
accepted an offer for $410,000 but assured them that he could probably get out of it because there
were some contingencies. (3) Mrs. Kubala then called Van Hoy to inform her of the Kubalas' intent
to submit an offer on the house. Van Hoy told her that Relph had already accepted an offer for
his property. In spite of Van Hoy's statements, the Kubalas delivered an offer for $420,000 to
the Coldwell Banker offices later that evening.

 On Monday morning, Van Hoy had both Hudson's and the Kubalas' written offers
before her, neither of which had been transmitted to nor signed by Relph. Van Hoy advised
Relph that he must sign Hudson's offer because he had already accepted it. Van Hoy knew the
offer was oral and thus not legally binding under the Statute of Frauds. See Tex. Bus. & Com.
Code Ann. §§ 26.01(a), (b)(4) (West 1987) (contract for sale of real estate not enforceable unless
in writing). Relph testified that he relied on Van Hoy's representation and would have signed the
Kubalas' offer if he had known that he had a choice. Van Hoy testified that she made this
recommendation to Relph in order to avoid any possible lawsuit by Hudson. 

 Van Hoy then added a "back-up contract addendum" to the Kubalas' offer, which
made the Kubalas' contract with Relph binding only on the termination of Relph's contract with
Hudson. She dated the addendum September 23, 1995, the previous day (Sunday). Van Hoy
faxed both Hudson's offer and the Kubalas' offer with the addendum to Relph. Relph signed both
contracts. Hudson's house was sold the following day, and the contingency on his contract was
removed. Thus, Hudson was able to buy Relph's house free from any contingencies.

 The Kubalas sued Coldwell Banker, Van Hoy, and Woellner for violation of the
DTPA, fraud, and negligent misrepresentation. (4) The jury assessed damages and attorney's fees,
finding that each appellant violated the DTPA and made negligent misrepresentations to the
Kubalas, and that Coldwell Banker and Van Hoy committed fraud against the Kubalas. (5) The
district court rendered judgment in favor of the Kubalas, assessing damages against Van Hoy and
Coldwell Banker of $8,877.33 (6) and $35,000 in attorney's fees; (7) stating that Woellner is "directly
liable" to the Kubalas for $443.88 in actual damages and $1,750 in attorney's fees; (8) and against
Van Hoy and Coldwell Banker for $1,000 each in additional damages.

 On appeal, appellants contend that the Kubalas are not consumers under the DTPA
and that the evidence is not legally or factually sufficient to support the jury's finding that
appellants (1) engaged in unconscionable action, see DTPA § 17.50; (2) engaged in a "false,
misleading, or deceptive act or practice," see DTPA § 17.46; (3) committed fraud against the
Kubalas; and (4) made negligent misrepresentations to the Kubalas. 


DISCUSSION

Status as a Consumer

 Appellants assert that the Kubalas are not "consumers" under the DTPA. Whether
a person is a consumer under the DTPA is generally a question of law. See Parkway Co. v.
Woodruff, 857 S.W.2d 903, 908 (Tex. App.--Houston [1st Dist.] 1993), aff'd, 901 S.W.2d 434
(Tex. 1995). Thus, we will review the district court's decision de novo. See Armbrister v.
Morales, 943 S.W.2d 202, 205 (Tex. App.--Austin 1997, no pet.). 


 A person who brings suit under the DTPA must be a "consumer." See DTPA
§ 17.50; Riverside Nat'l Bank v. Lewis, 603 S.W.2d 169, 173 (Tex. 1980). A consumer is
defined as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." 
DTPA § 17.45(4). The supreme court has recognized two requirements that must be established
for a person to qualify as a consumer: (1) "the person must have sought or acquired goods or
services by purchase or lease"; and (2) "the goods or services purchased or leased must form the
basis of the complaint." Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (Tex. 1981). 


 The Kubalas contend that they meet these requirements because (1) "they sought
to purchase a house from Mr. Relph," and (2) "the basis of their complaint is that the [appellants']
misrepresentations and deceptive acts prevented them from purchasing that property." We agree.

 The DTPA "clearly declares deceptive trade practices in the conduct of a real estate
sale to be unlawful." Woods v. Littleton, 554 S.W.2d 662, 667 (Tex. 1977). Real property is
a "good" under the DTPA. See DTPA § 17.45(1) ("'Goods' means . . . real property purchased 
. . . for use."); § 17.24(2) ("'Services' [include] services furnished in connection with the sale
. . . of goods."). (9) The Kubalas were attempting to purchase Relph's house. Thus, they sought
to acquire a good by purchase and satisfy the first prong of consumer status. See Flenniken v.
Longview Bank & Trust Co., 661 S.W.2d 705, 706 (Tex. 1983) (claimants were consumers to
extent they sought to acquire house); Cameron, 618 S.W.2d at 539 (DTPA defines "goods" to
include real property).

 "Consumer" is defined in terms of a person's relationship to a transaction in goods
or services. Cameron, 618 S.W.2d at 541. In Flenniken, the supreme court, addressing the
second requirement, held that the Flennikens, property owners who entered into a contract with
a builder, were consumers under the DTPA as to the bank who foreclosed on their property after
the builder assigned the owners' note to the bank. (10) Flenniken, 661 S.W.2d at 707. In reaching
this decision, the supreme court examined the entire transaction and found that "[f]rom the
Flennikens' perspective, there was only one transaction: the purchase of a house." Id. 

 From the Kubalas' perspective, there was only one transaction: purchasing Relph's
house. The Kubalas complain that appellants' conduct prevented them from purchasing Relph's
house. More specifically, their inability to purchase the house is the basis of their complaint. (11) 
See Chastain v. Koonce, 700 S.W.2d 579, 581 (Tex. 1985) (purchasers of lots are consumers
under second requirement in action against parties who sold property because they "are
complaining about an aspect of the lots purchased and the transaction involved"); see also
Zimmerman v. First Am. Title Ins. Co., 790 S.W.2d 690, 697 (Tex. App.--Tyler 1990, writ
denied) (appellants are consumers in claim against title company by original real estate transaction
in which they sought to acquire lot clear of liens). Therefore, the Kubalas would appear to satisfy
the second requirement to achieve consumer status. 

 However, appellants argue that the Kubalas must fail because they did not purchase
the house, and thus the house does not form the basis of their complaint. We disagree. The
DTPA "shall be liberally construed and applied to promote its underlying purposes, which are to
protect consumers against false, misleading, and deceptive business practices, unconscionable
actions, and breaches of warranty." DTPA § 17.44. Under this rule of construction, "[w]e must
give the Act [the DTPA] . . . its most comprehensive application possible without doing any
violence to its terms." Cameron, 618 S.W.2d at 539.

 The DTPA defines consumers as individuals who seek or acquire by purchase any
goods or services. See DTPA § 17.45(4) (emphasis added). This definition does not restrict
application of the DTPA to deceptive practices committed by persons who furnish the goods or
services on which the complaint is based. See Parkway Co., 857 S.W.2d at 908. Stated another
way, to qualify as a consumer one does not need to purchase the goods or services on which the
complaint is based. Therefore, the fact that the Kubalas did not purchase Relph's house is of no
consequence. 

 We conclude that the Kubalas are consumers under the DTPA and overrule
appellants' first issue.


Sufficiency of the Evidence In their remaining four issues, appellants challenge the legal and factual sufficiency
of the evidence supporting the jury's findings related to the Kubalas' DTPA, fraud, and negligent
misrepresentation claims. The Kubalas initially argue that appellants failed to preserve these
issues because they failed to raise them at the charge conference. Both no-evidence and factual-insufficiency complaints may be preserved by a motion for new trial. See Tex. R. Civ. P. 324(b);
Cecil v. Smith, 804 S.W.2d 509, 510-11 (Tex. 1991). Because appellants raised these issues in
their motion for new trial, we will consider them.

 In reviewing a legal sufficiency or "no evidence" point, we must consider only the
evidence and inferences tending to support the findings of the trier of fact and disregard all
evidence and inferences to the contrary. See Formosa Plastics Corp. USA v. Presidio Eng'rs &
Contractors, Inc., 960 S.W.2d 41, 48 (Tex. 1998) (citing Harbin v. Seale, 461 S.W.2d 591, 592
(Tex. 1970)). We will uphold the jury's findings if there is more than a scintilla of evidence to
support them. See id.; Continental Coffee Prods. Co. v. Casarez, 937 S.W.2d 444, 450 (Tex.
1996); Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). Thus, if there is any
evidence of probative force to support the jury's finding "that would enable reasonable and fair-minded people to differ in their conclusions," the no-evidence challenge will fail. Transportation
Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994); see ACS Investors, Inc. v. McLaughlin, 943
S.W.2d 426, 430 (Tex. 1997) (citing Southern States Transp., Inc. v. State, 774 S.W.2d 639, 640
(Tex. 1989)).

 When reviewing a jury verdict to determine the factual sufficiency of the evidence,
we must consider and weigh all the evidence and should set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986). We are prohibited from substituting our judgment for
that of the trier of fact simply because we may disagree with the result. See Peco Constr. Co. v.
Guajardo, 919 S.W.2d 736, 739 (Tex. App.--San Antonio 1996, writ denied).


Unconscionable Action

 The DTPA was enacted to "protect consumers against false, misleading, noticeable,
flagrant, and deceptive practices [and] unconscionable actions." Latham v. Castillo, 972 S.W.2d
66, 68 (Tex. 1998) (quoting DTPA § 17.44). A consumer may maintain an action under the
DTPA only if he or she can show "that the defendant has committed a deceptive act which is the
producing cause of the consumer's damages." Home Sav. Ass'n v. Guerra, 733 S.W.2d 134, 136
(Tex. 1987); see DTPA § 17.50(a)(3) (listing acts that give rise to DTPA claim if acts cause actual
damages). Appellants argue that the evidence was legally and factually insufficient to support the
jury's finding that they engaged in any unconscionable action or course of action that caused
damages to the Kubalas. See DTPA § 17.50(a)(3). 

 An "'unconscionable action' means an act or practice which, to a person's
detriment . . . takes advantage of the knowledge, ability, experience, or capacity of a person to
a grossly unfair degree." (12) DTPA § 17.45(5). The term "gross" in this section is defined as
"glaringly noticeable, flagrant, complete and unmitigated." Chastain v. Koonce, 700 S.W.2d
579, 583 (Tex. 1985). Thus, taking advantage of a person's lack of knowledge, ability,
experience, or capacity "to a grossly unfair degree requires a showing that the resulting unfairness
was glaringly noticeable, flagrant, complete and unmitigated." Id. at 584. 

 Viewing the evidence in the light most favorable to the jury's verdict, we find no
evidence that the Kubalas were taken advantage of by Woellner to a grossly unfair degree. The
only evidence of Woellner's conduct contained in the record indicates that when the Kubalas were
attempting to present an offer at Coldwell Banker's offices, Woellner did not tell them that Van
Hoy was on the premises. Assuming that this constitutes some "action" on Woellner's part, it
certainly does not rise to the requisite standard of showing that the resulting unfairness was
glaringly noticeable, flagrant, complete, and unmitigated. See Chastain, 700 S.W.2d at 584. 

 With regard to Van Hoy's conduct, the Kubalas place particular reliance on the fact
that Van Hoy had an incentive to sell Relph's house to Hudson because Coldwell Banker would
receive a larger commission than it would from dealing with the Kubalas. They assert this is
evidence that Van Hoy engaged in unconscionable actions. On the day Hudson extended his final
offer to Relph, the Kubalas attempted to submit an offer of their own. While Van Hoy was aware
of their intent to do so, the Kubalas could not reach her, and Van Hoy told Relph that there were
no additional offers on his house. The jury could have reasonably inferred from this that Van Hoy
was evading the Kubalas until Relph accepted Hudson's offer. The Kubalas finally reached Van
Hoy after Relph had orally accepted Hudson's offer, and Van Hoy told them of this acceptance
even though she knew that this oral contract was not legally enforceable. Believing there was a
legally binding contract between Relph and Hudson, the Kubalas submitted their own offer as a
back-up, binding only if the Hudson contract fell through. Van Hoy advised Relph to sign
Hudson's offer because he had orally accepted it. She then added a back-up addendum to the
Kubalas' offer and faxed it to Relph two hours after she faxed Hudson's offer.

 When viewed in the light most favorable to the jury's verdict, this evidence
indicates that the Kubalas were relying on Van Hoy's knowledge and ability to communicate with
Relph in order to present their offer on his house. Van Hoy was in a better position than the
Kubalas to know the status of the sale of Relph's house. The jury could have reasonably believed
that Van Hoy took advantage of her position and engaged in acts that eventually ended the
Kubalas' chances of buying Relph's house. We therefore conclude that there is some evidence
to support the jury's finding that Van Hoy took advantage to a grossly unfair degree of the
Kubalas' lack of knowledge and ability. (13) See Latham v. Castillo, 972 S.W.2d 66, 68 (Tex. 1998)
(some evidence that lawyer engaged in unconscionable conduct where clients depended on him
to file suit); Brown v. Galleria Area Ford, Inc., 752 S.W.2d 114, 116 (Tex. 1988) (some evidence
that dealership owners took advantage of consumer's lack of knowledge of internal working
relationship between old and new owners of dealership); HOW Ins. Co. v. Patriot Fin. Servs. of
Tex., Inc., 786 S.W.2d 533, 541 (Tex. App.--Austin 1990, writ denied) (some evidence of
unconscionability where warrantor and insurer were in a better position to have detailed
understanding of procedural aspects of homeowner policy).

 Considering the record as a whole, on the other hand, we must consider this
evidence in the context of ordinary real estate transactions. The information and disclosure form
given to Mrs. Kubala by Woellner clearly stated that Van Hoy represented Relph. As Relph's
agent, Van Hoy had no duty to the Kubalas to make herself available to accept offers or to
disclose all information pertaining to the sale of Relph's house. Van Hoy did not lie to the
Kubalas when she told them that Relph had already accepted an offer; at that time Relph had
orally accepted Hudson's offer. Van Hoy testified that she advised Relph to sign Hudson's
written offer to avoid any possible suit by Hudson that could result because of their oral
agreement. This advice is reasonable considering that oral real estate contracts, while not legally
binding, are still actionable. See Enochs v. Brown, 872 S.W.2d 312, 318 (Tex. App.--Austin
1994, no writ) (citing Mason v. Abel, 215 S.W.2d 377, 381-82 (Tex. Civ. App.--Dallas 1948, writ
ref'd n.r.e.)) (oral contract for sale of real property is not void but is "voidable at the option of
the party against whom the contract is to be enforced"). Viewing all of the evidence concerning
Van Hoy's duty to the Kubalas in the context of real estate agency relationships, Van Hoy's
conduct cannot be construed as "glaringly noticeable, flagrant, complete and unmitigated."

 Moreover, the DTPA was designed to protect consumers with no special skills from
acts or practices which take advantage of their lack of knowledge, ability, or experience. See
DTPA §§ 17.44, .45(5). "[A]n unconscionability claim must establish that the seller, armed with
superior knowledge, ability, or experience to discern the impropriety of a particular transaction,
nonetheless employed high-pressure tactics, preyed upon a consumer's vulnerability, or used
misleading inducements to convince the consumer to purchase inappropriate goods." Abbott Lab.,
Inc. v. Segura, 907 S.W.2d 503, 509 (Tex. 1995) (Cornyn, J., concurring); see also Parkway Co.
v. Woodruff, 901 S.W.2d 434, 441 (Tex. 1995) ("unconscionability requires that the seller take
advantage of special skills and training at the time of the sale"). The record, however, reflects
that the Kubalas were not average real estate consumers. Mrs. Kubala, like Van Hoy, was a
licensed real estate agent and indicated that she understood real estate transactions and agency
relationships. To protect their interests further, the Kubalas hired Lins, a real estate broker, to
represent them in this transaction. From this, we cannot presume that the Kubalas lacked a
sufficient level of knowledge, ability, experience, or capacity so as to be taken advantage of by
Van Hoy to a grossly unfair degree. Cf. Abbott Lab., 907 S.W.2d at 509 (cannot assume
consumers' lack knowledge to fairly evaluate desirability of infant formula given "general level
of readily available information" on the subject). Therefore, we conclude that there is factually
insufficient evidence to support the jury's finding that Van Hoy engaged in unconscionable
conduct.

 Thus, as the evidence is legally insufficient to support the jury's finding that
Woellner engaged in unconscionable conduct, we reverse the district-court judgment and render
judgment that the Kubalas take nothing on their claim that Woellner violated the DTPA. In
addition, having found the evidence factually insufficient to support the jury's finding that Van
Hoy and, through her, Coldwell Banker engaged in such unconscionable conduct to support a
DTPA claim, we remand this issue to the district court for further proceedings. 


False, misleading, or deceptive acts or practices

 Appellants next assert that the evidence was legally and factually insufficient to
support the jury's finding that they engaged in "false, misleading, or deceptive acts or practices." 
Pursuant to the DTPA, "[f]alse, misleading, or deceptive acts or practices in the conduct of any
trade or commerce are . . . unlawful." DTPA § 17.46(a). The DTPA sets forth a list of acts that
constitute "false, misleading, or deceptive acts or practices," four of which were presented to the
jury:


a) Representing to the Kubalas that an agreement confers or involves rights,
remedies, or obligations that it did not have or involve;


b) Failing to disclose information to the Kubalas about the house or her services
which was known at the time of the transaction with the intention to induce the
Kubalas into a transaction into which they would not have entered had the
information been disclosed; or


c) Misrepresenting to the Kubalas her authority to negotiate the final terms of a
consumer transaction; or


d) Advertising to the Kubalas real property or real estate services with the intent
not to sell it as advertised. (14)



 We have previously reviewed Woellner's role in this matter. The Kubalas assert
that Woellner's actions constitute "more than a scintilla" of evidence that she committed each of
the acts submitted to the jury. We disagree. Woellner did not misrepresent her ability to help
the Kubalas prepare an offer to Relph. She refused to prepare the offer when she learned that
Mrs. Kubala intended to be the selling agent, thus depriving Woellner of any commission for her
efforts. While she could have prepared an offer, she chose not to do so. We do not find it
significant that the Kubalas had not accepted Woellner's offer to help them market their own
home. Viewing the evidence in the light most favorable to the jury's verdict, we find no evidence
that Woellner engaged in any false, misleading, or deceptive act or practice that was a producing
cause of damages to the Kubalas.

 The primary evidence that the Kubalas argue supports the jury's finding of false,
misleading, or deceptive acts on the part of Van Hoy and Coldwell Banker consists of Van Hoy's
representations that (1) Relph had accepted a previous offer, and (2) the Kubalas must submit their
offer with a back-up addendum. It is undisputed that Van Hoy knew that the initial agreement
between Relph and Hudson was not in writing. Before Relph and Hudson signed a written
contract, Van Hoy told the Kubalas that Relph had accepted an offer. She never told them that
the offer was not in writing. The Kubalas signed the back-up addendum that only allowed them
to purchase the house "upon the termination of a previous contract between [Relph] and . . .
Hudson." The Kubalas testified that had they known that there was no enforceable "previous
contract" between Relph and Hudson, they would not have signed the addendum; instead, they
would have sent a competing offer to Relph. In further support of the jury's finding, the Kubalas
urge that Van Hoy had a motive for her behavior: she and Coldwell Banker would receive a
larger commission if Hudson purchased Relph's house.

 We have reviewed the above evidence as well as other evidence and inferences
found in the record, and find it wholly lacking in probative force to support an affirmative jury
finding of a false, misleading, or deceptive act or practice as those terms are defined in the court's
charge. Van Hoy's statement that Relph had accepted another offer was truthful. There was not
a signed contract, but Van Hoy, as Relph's agent, had no duty to share this information with the
Kubalas. The statement was not a representation "that an agreement confers or involves rights,
remedies, or obligations that it did not have or involve." See DTPA § 17.46 (b)(12). We find
no evidence that Van Hoy's statement was made with the intention "to induce the Kubalas into
a transaction into which they would not have entered had the information been disclosed." See
id. § 17.46 (b)(23). The Kubalas at all times were attempting to purchase Relph's house. The
Kubalas submitted an offer to Relph in spite of Van Hoy's statement that he had accepted another. 
The back-up addendum did not create a separate transaction. Relph testified that he signed the
contract with Hudson because Van Hoy told him that he must, due to his previous oral acceptance
of Hudson's offer. There is no evidence that he failed to accept the Kubalas' offer because of the
back-up addendum. Van Hoy was Relph's agent. While although she could submit offers to
Relph, the final decision as to which to accept was his alone. We find no evidence that she
misrepresented to the Kubalas "her authority to negotiate the final terms" of the sale of Relph's
property. See id. § 17.46 (b)(24). Finally, the record is devoid of evidence from which a
reasonable trier of fact could find that Coldwell Banker did not intend to sell Relph's property as
advertised. See id. § 17.46 (b)(9). The Kubalas argue that it was clear that Coldwell Banker
favored a sale to Hudson in order to receive "multiple commissions." The supreme court has
stated that a primary purpose of subdivision (9) is the prevention of "bait advertising," a practice
by which a seller attracts customers to a low-priced product or service, then switches them to
another that is priced higher. See Smith v. Baldwin, 611 S.W.2d 611, 615 (Tex. 1981). Coldwell
Banker's actions were not marketing devices designed to induce the public to patronize it, and the
Kubalas were not enticed to enter into a contractual relationship because of a public notice
drawing attention to Coldwell Banker's capabilities as a real estate company. See id. The
evidence is undisputed that the Kubalas were attracted to Relph's house without assistance from
or urging by Coldwell Banker, and contacted Coldwell Banker only because it was the real estate
company listed on the sign in Relph's yard. They did not respond to advertising of Coldwell
Banker and request that they be shown properties. 

 Therefore, we sustain appellants' third issue. 


Fraud

 Coldwell Banker and Van Hoy (15) further argue that the evidence is legally and
factually insufficient to support the jury's finding that they committed fraud against the Kubalas. 
The issue concerning whether the appellants committed fraud against the Kubalas was generally
submitted to the jury to consider both types of fraud: active misrepresentations and passive
silence. Santanna Nat'l Gas Corp. v. Hamon Operating Co., 954 S.W.2d 885, 890 (Tex.
App.--Austin 1997, no writ). Because there is no indication of the type of fraud the jury found,
we must consider whether the evidence was sufficient to support at least one.

 Fraud dealing with active misrepresentations requires "a material misrepresentation,
which was false, and which was either known to be false when made or was asserted without
knowledge of its truth, which was intended to be acted upon, which was relied upon, and which
caused injury." Sears, Roebuck & Co. v. Meadows, 877 S.W.2d 281, 282 (Tex. 1994). The
Kubalas point out several misrepresentations made by Van Hoy to Relph as evidence that Van Hoy
made material misrepresentations to the Kubalas. However, the jury was correctly charged that
the material misrepresentations had to be made to the Kubalas. This evidence is therefore not
sufficient to establish a fraud claim based on active misrepresentations. 

 The Kubalas also assert that Van Hoy's statement that Relph had already accepted
an offer on his house constituted a material misrepresentation to them. We hold that it does not. 
In order to establish fraud, the representation must be false. See id. Van Hoy's statement to the
Kubalas was not false; Relph had orally accepted Hudson's offer on the house. Accordingly, we
find that there is no evidence to support a finding of fraud under the first theory submitted to the
jury. 

 The controlling issue here is whether Van Hoy's failure to disclose that the
resulting agreement between Relph and Hudson was oral, and hence not binding, constituted
fraud based on passive silence. The jury was instructed that passive fraud exists only if "the
Kubalas suffer injury as a result of acting without knowledge of the undisclosed fact." (Emphasis
added). There is no evidence in the record, however, establishing that the Kubalas' injury
stemmed from Van Hoy's statement that Relph had already accepted an offer on the house. 

 The record reflects that Van Hoy made the statement at issue on Sunday afternoon.
Assuming, as we must, that Van Hoy was attempting to discourage the Kubalas from bidding on
the house, (16) Mr. Kubala testified that he still wanted to submit an offer because he thought that
the agreement between Hudson and Relph might be oral and knew that "if it wasn't in writing,
it didn't mean anything." Thus, despite Van Hoy's statement, the Kubalas still submitted an offer
on Relph's house Sunday evening and thus were not injured at this point. 

 The evidence instead indicates that if the Kubalas were injured, it was by Van
Hoy's representations to Relph regarding the Hudson and Kubala offers. It is undisputed that Van
Hoy told Relph that it would be in his interest to sign Hudson's offer because he had already
orally accepted the Hudson offer. Relph testified that he relied on Van Hoy's representations
regarding Hudson's offer and that he would have signed the Kubalas' offer had Van Hoy told him
he was not legally bound to his oral agreement with Hudson. Based on this evidence it is clear
that the Kubalas' injury originated from Van Hoy's statements to Relph that he should sign
Hudson's offer, not her representations to the Kubalas regarding the status of Hudson's offer. As
the alleged misrepresentations to Relph were not made against the Kubalas, we find that there is
legally insufficient evidence of fraud in this case. 

 Therefore, we reverse the district-court judgment on this issue and render judgment
in favor of Van Hoy and Coldwell Banker.


Negligent Misrepresentation

 Appellants finally argue that the evidence was insufficient to support the jury's
finding that they made negligent misrepresentations to the Kubalas. The jury was charged that
a

"[n]egligent misrepresentation" occurs when: (a) A party makes a representation
to the Kubalas in the course of her business or in a transaction in which she has a
pecuniary interest; (b) The representation supplies false information for the
guidance of the Kubalas in their business; and (c) The party making the
representation did not exercise reasonable care or competence in obtaining or
communicating the information. 



 Considering the evidence in the light most favorable to the jury's verdict, we hold
that there is no evidence to support the jury's finding that Van Hoy made negligent representations
to the Kubalas. The Kubalas argue that Van Hoy's statement that Relph had already accepted an
offer supported the jury's finding. However, a finding of negligent misrepresentation clearly
requires the negligent furnishing of false information. Van Hoy's statement, although arguably
misleading, was not false; Relph had accepted an offer from Hudson. See Continental Sav. Ass'n
v. Collins, 814 S.W.2d 829, 833 (Tex. App.--Houston [14th Dist.] 1991, no writ) (though
statement may have been misleading, it was not "information negligently supplied for the guidance
of others" because it was not false). The Kubalas additionally point to several statements made
by Van Hoy to Relph as evidence that she made negligent misrepresentations to them. The jury,
however, was required to find that Van Hoy made misrepresentations to the Kubalas. Thus, this
evidence is not legally sufficient to support the jury's finding that Van Hoy made negligent
misrepresentations to the Kubalas.

 Viewing the evidence in the same light, we similarly find no evidence to support
the jury's finding that Woellner made a false representation to the Kubalas. The Kubalas contend
that Woellner made a misrepresentation to them concerning her abilities when she refused to draft
an offer on their behalf after she mailed them the agency disclosure form. We disagree. The
TREC disclosure form that Woellner sent to the Kubalas provided in pertinent part that "[a]
broker can assist in locating a property, preparing a contract or lease, or obtaining financing
without representing you." Texas Real Estate Commission, TREC Agency Disclosure Form No.
3 (1993). Woellner was not required under this form to prepare an offer on behalf of the Kubalas,
nor did she indicate that she would by signing this form. This form simply indicates that
Woellner could prepare an offer if she so desired. Thus, the record does not indicate that she
supplied any false information to the Kubalas.

 Because we hold that there is no evidence that any Coldwell Banker employee made
a negligent misrepresentation to the Kubalas, we also hold that the evidence is legally insufficient
to support the jury's finding that Coldwell Banker engaged in this conduct.

 Therefore, we uphold the appellants' final issue and reverse the district-court
judgment awarding damages against them for negligent misrepresentation.


CONCLUSION

 We reverse that portion of the district court's judgment awarding damages and
attorney's fees against Woellner and render judgment that the Kubalas take nothing against her. 
Having found that the evidence is legally insufficient to support the jury's findings that Van Hoy
and Coldwell Banker engaged in fraud and misrepresentation and violated the DTPA by engaging
in false, misleading, or deceptive acts or practices, we reverse the district-court judgment and
render judgment that the Kubalas take nothing from them on these claims. Because the evidence
is factually insufficient to support the jury's finding that Van Hoy and Coldwell Banker violated
the DTPA by engaging in unconscionable conduct toward the Kubalas, we reverse that portion
of the judgment and remand that claim to the district court for further proceedings.



 


 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: September 16, 1999

Do Not Publish
1. See Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1999).
2. We refer to Van Hoy, Woellner and Kubala as licensed real estate "agents" because that is
how they are referred to in the record. The Texas Real Estate License Act provides for two types
of licenses, real estate broker and salesperson. See Tex. Rev. Civ. Stat. Ann. art. 6573a, § 6(a)
(West Supp. 1999). We presume from the record that Van Hoy, Woellner and Kubala are
licensed salespersons.
3. Hudson's contract, which was not signed until the following Monday, had two conditions:
(1) the contract was contingent on Hudson selling his house by November 17, 1995, and (2) if
Relph accepted a second unconditional offer, Hudson had to release the contingency within 24
hours. 
4. The Kubalas also sued for tortious interference with a prospective contractual relationship,
fraudulent misrepresentation, breach of duty, and violation of real estate laws; however, these
claims are not at issue on appeal.
5. The jury found that the Kubalas' damages were attributable to the parties in the following
percentages: Van Hoy, 60%; Woellner, 5%; Coldwell Banker, 25%; Joyce Kubala, 5%; Edward
Kubala, 5%.
6. The jury found damages to the Kubalas of $8,820. The district court reduced these damages
by 10%, the combined amount of the Kubalas' responsibility as found by the jury, and added
prejudgment interest to arrive at the figure of $8,877.33. Pursuant to the judgment, Van Hoy is
liable for the full amount of damages. Coldwell Banker is vicariously liable for all of the damages
assessed against Van Hoy but is directly liable for 25% of such damages.
7. In addition, the court ordered $8,000 for an appeal to the court of appeals, $1,500 for
making or responding to a petition for review to the supreme court, and $5,000 for argument
before the supreme court. The attorney's fees liability of Van Hoy and Coldwell Banker was
apportioned in the same manner as the actual damages. See footnote 6, supra.
8. The court also ordered $400 for appeal to the court of appeals, $75 for petition for review
to the supreme court, and $250 for supreme court argument. It is unclear whether the district
court's judgment assesses damages against Woellner in addition to those assessed against Van Hoy
and Coldwell Banker or only makes her directly liable for a portion of those damages. The
answer is immaterial to our determination of this case.
9. In fact, the DTPA "was specifically amended in 1975 to clarify the legislature's intent to
insure that real property purchases could support individual causes of action." Chastain v.
Koonce, 700 S.W.2d 579, 581 (Tex. 1985).
10. The court of appeals found that the Flennikens satisfied the first requirement for consumer
status; however, they treated the builder's assignment to the bank as a separate transaction from
the Flennikens' transaction with the builder. Flenniken v. Longview Bank & Trust Co., 661
S.W.2d 705, 706-07 (Tex. 1983). From this, the court found that the Flennikens did not satisfy
the second requirement because the bank's services did not form the basis of their complaint. Id.
11. The appellants, in a separate argument addressing whether the Kubalas were consumers
because they purchased services from them, agree with this statement. Specifically, they state in
their brief that "the aim of [the Kubalas'] dealings with [the appellants] was to purchase Mr.
Relph's house."
12. While the DTPA lists two ways in which an act can be considered unconscionable, the
Kubalas relied on only one in asserting that the appellant's actions were unconscionable. See
DTPA § 17.45(5).
13. Appellants argue that Van Hoy's misrepresentations to Relph should not be considered
because these actions do not have anything to do with her relationship with the Kubalas. We
disagree. The definition of unconscionable action does not deal in terms of relationship; it only
addresses acts that, to a person's detriment, take advantage of the lack of knowledge or ability of
another in a grossly unfair degree. See DTPA § 17.45. Van Hoy's acts toward Relph could have
been interpreted by the jury as taking advantage of the Kubalas' inability to communicate with
Relph. Thus, we find that this claim is without merit. 
14. See DTPA § 17.46 (b)(12), (23), (14) & (9). The prohibited acts are presented in the order
in which they appear in the jury charge.
15. The jury found that Woellner did not commit fraud against the Kubalas.
16. See Formosa Plastics, 960 S.W.2d at 48 (view evidence and inferences tending to support
jury's findings in legal sufficiency point).



in the record. The Texas Real Estate License Act provides for two types
of licenses, real estate broker and salesperson. See Tex. Rev. Civ. Stat. Ann. art. 6573a, § 6(a)
(West Supp. 1999). We presume from the record that Van Hoy, Woellner and Kubala are
licensed salespersons.
3. Hudson's contract, which was not signed until the following Monday, had two conditions:
(1) the contract was contingent on Hudson selling his house by November 17, 1995, and (2) if
Relph accepted a second unconditional offer, Hudson had to release the contingency within 24
hours. 
4. The Kubalas also sued for tortious interference with a prospective contractual relationship,
fraudulent misrepresentation, breach of duty, and violation of real estate laws; however, these
claims are not at issue on appeal.
5. The jury found that the Kubalas' damages were attributable to the parties in the following
percentages: Van Hoy, 60%; Woellner, 5%; Coldwell Banker, 25%; Joyce Kubala, 5%; Edward
Kubala, 5%.
6. The jury found damages to the Kubalas of $8,820. The district court reduced these damages
by 10%, the combined amount of the Kubalas' responsibility as found by the jury, and added
prejudgment interest to arrive at the figure of $8,877.33. Pursuant to the judgment, Van Hoy is
liable for the full amount of damages. Coldwell Banker is vicariously liable for all of the damages
assessed against Van Hoy but is directly liable for 25% of such damages.
7. In addition, the court ordered $8,000 for an appeal to the court of appeals, $1,500 for
making or responding to a petition for review to the supreme court, and $5,000 for argument
before the supreme court. The attorney's fees liability of Van Hoy and Coldwell Banker was
apportioned in the same manner as the actual damages. See footnote 6, supra.
8. The court also ordered $400 for appeal to the court of appeals, $75 for petition for review
to the supreme court, and $250 for supreme court argument. It is unclear whether the district
court's judgment assesses damages against Woellner in addition to those assessed against Van Hoy
and Coldwell Banker or only makes her directly liable for a portion of those damages. The
answer is immaterial to our determination of this case.
9. In fact, the DTPA "was specifically amended in 1975 to clarify the legislature's intent to
insure that real property purchases could support individual causes of action." Chastain v.
Koonce, 700 S.W.2d 579, 581 (Tex. 1985).
10. The court of appeals found that the Flennikens satisfied the first requirement for consumer
status; however, they treated the builder's assignment to the bank as a separate transaction from
the Flennikens' transaction with the builder. Flenniken v. Longview Bank & Trust Co., 661
S.W.2d 705, 706-07 (Tex. 1983). From this, the court found that the Flennikens did not satisfy
the second requirement because the bank's services did not form the basis of their complaint. Id.
11. The appellants, in a separate argument addressing whether the Kubalas were consumers
because they purchased services from them, agree with this statement. Specifically, they state in
their brief that "the aim of [the Kubalas'] dealings with [the appellants] was to purchase Mr.
Relph's house."
12. While the DTPA lists two ways in which an act can be considered unconscionable, the
Kubalas relied on only one in asserting that the appellant's actions were unconscionable. See
DTPA § 17.45(5).
13. Appellants argue that Van Hoy's misrepresentations to Relph should not be considered
because these actions do not have anything to do with her relationship with the Kubalas. We
disagree. The definition of unconscionable action does not deal in terms of relationship; it only
addresses acts that, to a person's detriment, take advantage of the lack of knowledge or ability of
another in a grossly unfair degree. See DTPA § 17.45. Van Hoy's acts toward Relph could have
been interpreted by the jury as taking advantage of the Kubalas' inability to communicate with
Relph. Thus, we find that this claim is without merit. 
14. See DTPA § 17.46 (b)(12), (23), (14) & (9). The prohibited acts are presented in the order
in which they appear in the jury cha