**Naomi CUSHMAN, Plaintiff,**

v.

**GC SERVICES, LP., Defendant.**

**Civil Action No. H–08–2229.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 13, 2009.

Marshall Meyers, Weisberg & Meyers LLC, Phoenix, AZ, Susan A. Landgraf, Weisberg Meyers LLC, Austin, TX, for Plaintiff.

Kandy Elaine Johnson Messenger, Sprott Rigby Newsom Robbins Lunceford & Bell, PC, Houston, TX, for Defendant.

### ORDER

VANESSA D. GILMORE, District Judge.

Pending before the Court is Defendant GC Services, LP's Motion for Partial Summary Judgment on Plaintiff's DTPA and TDCPA claims, incorrectly styled as Defendant GC Services, LP's Partial Motion for Summary Judgment. (Instrument No. 17).

### I.

### A.

Plaintiff Naomi Cushman ("Plaintiff" or "Cushman") brings suit for damages against Defendant GC Services, LP ("Defendant" or "GC Services") for debt collection actions allegedly taken in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), the Texas Debt Collection Practices Act, Chapter 392 ("TDCPA"), and the Texas Business and Commerce Code, Subchapter E, Chapter 17 ("DTPA"). (Instrument No. 1, at 1). Plaintiff seeks statutory damages and a declaratory judgment for violations of the FDCPA. (*Id.*, at 7). She seeks a declaratory judgment under the TDCPA, as well as all actual damages, exemplary damages, mental anguish damages, and discretionary additional damages as recovery for Defendant's conduct. (*Id.*).

### B.

The facts of this case stem from a debt Cushman owed on her American Express credit card and GC Services's attempt to collect the debt. Plaintiff first remembers being contacted by American Express sometime in the spring of 2007 after she fell behind on her payments. (Instrument No. 17, Exhibit A, at 48). She subsequently resumed payments but then fell behind again in approximately March of 2008. (*Id.*, at 49). In March 2008, Plaintiff began receiving calls from Defendant GC Services regarding the debt on her American Express account. (*Id.*, at 54). She received both letters through the mail as well as voice mail messages left on her cell phone. (*Id.*).

Plaintiff never answered calls from Defendant directly. Instead, she called Defendant back after receiving voice mails. (*Id.*, at 68). Plaintiff only spoke to Defendant's employees on two occasions, March 31st and May 6th. (*Id.*, at 132). She also received calls between those two dates, but she cannot remember the frequency of the calls. (*Id.*). Plaintiff has no memory of Defendant's representatives ever using foul language or curse words. (*Id.*, at 154).

On March 31, 2008, Plaintiff called GC Services from her cell phone while sitting in her car in the Chick–Fil–A parking lot during her lunch break. (*Id.*, at 69). She spoke with a Ms. Dunn, an employee of GC Services, concerning her account. (*Id.*, at 55). Plaintiff felt that the conversation with Ms. Dunn was "way out of line." (*Id.*, at 57). Plaintiff described Ms. Dunn as "aggressive, belligerent" and unwilling to set up a payment arrangement. (*Id.*). According to Plaintiff, Ms. Dunn "said the only option was payment in full, which, of course, was impossible at the time." (*Id.*, at 71). Plaintiff further alleges that Ms. Dunn was angry and told her "You think you know the law. You don't. We'll see." (*Id.*, at 72). This left Plaintiff feeling "like there was a henchman behind me about to break my knees." (*Id.*). Plaintiff contends that she was threatened; Ms. Dunn purportedly stated that Defendant would attempt to garnish Plaintiffs wages and contact her employer and family members to get the money. (*Id.*, at 73). Plaintiff "remember[s] her saying that—talking about, the options are wage garnishment, potentially jail, blah, blah, blah, blah" (*Id.*, at 76–77).

Plaintiff also claims that Defendant contacted her employer directly. In the spring of 2007, Cushman received a call from a collections agency, which she believes was GC Services, at the branch office where she was employed as a contract worker. (*Id.*, at 83). Because she was on a temporary assignment at the branch office, Plaintiff claims that "[t]here is no way that there is any record that they could have found, any public record, that would have associated me with that branch office phone number." (*Id.*, at 80). Plaintiff does not have any documentation evidencing that GC Services in fact contacted another office to find out where Plaintiff was assigned. (*Id.*, at 81).

Plaintiff is not aware of any of her family members being contacted concerning her debt. (*Id.*, at 100). However, after the phone call with Ms. Dunn, Plaintiff alerted her mother, who is in a nursing home, to the possibility that a company might call asking for her whereabouts. (*Id.*, at 101). Plaintiff also alerted her fiance and a woman who was living with her at the time about the problems and potential calls from GC Services. (*Id.*, at 101).

After the call on March 31, 2008, Plaintiff next spoke with one of Defendant's employees on May 6, 2008. (*Id.*, at 125). She had received voice mails from a man named Mr. Lewis and, believing that she would have a better chance of working out a payment plan with a different representative, Plaintiff called GC Services and asked to speak to Mr. Lewis. (*Id.*). She made the call from her car at 6:46 pm in a Whole Foods parking lot. (*Id.*, at 126–127). After being told by the representative who answered the phone that Mr. Lewis was not in, she discussed her account with another man, whose name Cushman cannot recall. (*Id.*, at 127). She recalls the call being "much more civil" and that they had actually worked out a payment agreement. (*Id.*, at 129). However, towards the end of the call, Plaintiff requested that GC Services stop contacting her now that she had agreed to a payment plan. At that point, the man told

her that it was not possible to end the calls because they were required to contact her on a weekly basis. (*Id.*). Plaintiff then offered to contact them in writing to request the calls cease, but the man replied "we may or may not receive your letter." (*Id.*). According to Plaintiff, she then stated that she would contact American Express directly to make her request, but the man told her "you can't" and "[t]hey won't speak with you [because i]t's our debt now." (*Id.*, at 130). Plaintiff also alleges that the man again mentioned the possibility of wage garnishment after stating that her letter might not be received. (*Id.*, at 150).

Plaintiff does not report missing work in connection with Defendant's debt collection activities. (*Id.*, at 206). After the last telephone conversation in May 2008, Plaintiff is unaware of Defendant contacting any of her family members, friends, or employers or attempting to garnish her wages. (*Id.*, at 232). Plaintiff does allege that she lost sleep for about half the nights between March 31st and May 6th. (*Id.*, at 236). Additionally, Plaintiff contracted shingles in August 2008 and requires ongoing treatment. (*Id.*, at 259). Plaintiff claims that Defendant is thirty to forty percent responsible for her condition. (*Id.*, at 280).

In addition to the phone calls, Cushman also received letters from GC Services. The letters contained language directing her to call GC Service's General Manager, Mr. Bernhagen, regarding the handling of the account. (Instrument No. 19, Exhibit D). Plaintiff never contacted Mr. Bernhagen or GC Services concerning their method of handling the account. (Instrument No. 17, Exhibit A, at 176). Sometime around August of 2008, Plaintiff was contacted by Mr. Earle Britton, an attorney with the Korn Law Firm, after her account was sent to that firm for collection. (*Id.*, at 193–195). Plaintiff set up a payment plan and paid off the debt within approximately thirty days. (*Id.*, at 195).

## C.

Plaintiff brought suit against Defendant on July 16, 2008, seeking damages for debt collection actions allegedly taken in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), the Texas Debt Collection Practices Act, Chapter 392 ("TDCPA"), and the Texas Business and Commerce Code, Subchapter E, § 17, commonly known as the Texas Deceptive Trade Practices and Plaintiff Protection Act ("DTPA"). (Instrument No. 1, at 1). As to her FDCPA claim, Plaintiff alleges that Defendant, in attempts to collect the debt, threatened to take actions that are in violation of § 1692(e)(5), used profane language in violation of § 1692(d)(2), contacted third parties regarding the debt in violation of § 1692(B), and attempted to contact Cushman at inconvenient times in violation of § 1692(C). (Instrument No. 15, at 3–4). In support of her TDCPA claim, Plaintiff contends that Defendant used false or deceptive means and abusive language to collect the debt, in violation of Tex. Fin. Code §§ 392.304(19) and 392.302(1). (*Id.*, at 4). Finally, regarding her DTPA claim, Plaintiff claims that Defendant violated § 17.41 by making material representations which it knew or should have known to be false. (*Id.*, at 6).

On July 22, 2008, Defendant filed an answer to Plaintiff's original complaint and raised the affirmative defense of failure to state a claim. (Instrument No. 4). Defendant argued that its actions did not rise to the level of reckless, willful, wanton, intentional, knowing or malicious, and therefore Defendant lacked the requisite intent. (*Id.*, at 5). Defendant also argued that Plaintiff could have mitigated her damages and thus that any award she may receive

should be reduced by that amount. (*Id.*) Defendant also filed an offer of judgment on July 22, 2008, offering to settle Plaintiff's claim for $1,750.00. (Instrument No. 5, at 1).

On January 15, 2009, Plaintiff filed a motion to amend the complaint based on evidence obtained through discovery. (Instrument No. 13). Defendant did not oppose the amendment (*Id.*, Exhibit A). The Court granted Plaintiff's motion and Plaintiff filed her first amended complaint on February 24, 2009. (Instrument No. 15). In the amended complaint, Plaintiff reiterated the original allegations that Defendant violated the FDCPA, TDCPA and DTPA, but also asserted that Defendant committed another act—contacting third parties regarding the debt after having already located and communicated with Plaintiff—in violation of all three of the statutes. (*Id.*, at 3). On March 10, 2009, Defendant filed an answer to Plaintiff's amended complaint and denied all of Plaintiff's allegations and Plaintiff's standing to bring suit. (Instrument No. 16).

On April 1, 2009, Defendant filed a motion for partial summary judgment on Plaintiff's DTPA and TDCPA claims. (Instrument No. 17). Defendant argues that Plaintiff lacks standing under both the DTPA and TDCPA and that Defendant is entitled to judgment as a matter of law. (*Id.*, at 1). Defendant filed a memorandum in support of its motion for partial summary judgment further outlining its arguments. (Instrument No. 17).

Defendant first argues that Plaintiff lacks standing under the DTPA because she does not qualify as a "consumer" and "consumer status is an essential element of a DTPA cause of action." (*Id.*, at 3). Defendant posits that consumer status is a question of law for the Court to decide, but contends that two requirements must be met to qualify as a "consumer" under the DTPA: (1) the person must seek to acquire goods or services by purchase or lease and (2) the goods or services purchased or leased must form the basis of the complaint. (*Id.*). Defendant cites both the DTPA and several Texas Supreme Court decisions in support of this argument. (*Id.*). Defendant argues that Plaintiff does not meet the two requirements because the extension of credit is not considered a "good" or "service" and therefore Plaintiff's suit is not based on any goods or services that she acquired from Defendant. (*Id.*, at 5).

As to its second argument that Plaintiff lacks standing under the TDCPA, Defendant asserts that a Texas corporation cannot be held liable under the TDCPA for collection actions taken outside of Texas. (*Id.*, at 6). Defendant points to the fact that Plaintiff is not and never was a Texas resident and that none of the contested telephone calls were made from or to Texas. (*Id.*, at 9). Defendant argues that the Texas Finance Code is only intended to regulate collection activity within Texas. (*Id.*). Defendant avers that to hold it liable for collection actions taken outside of Texas would violate due process. (*Id.*, at 8).

On April 21, 2009, Plaintiff filed a response to Defendant's motion for partial summary judgment. (Instrument No. 19). Plaintiff first addressed her TDCPA claim. In support of her argument that she has standing to sue, Plaintiff points to facts—letters generated in Defendant's Houston office, relevant phone calls, and a "skip tracing" process performed out of the Houston office—in support of a finding that Defendant's actions occurred in Texas. (*Id.*, at 2–6). Plaintiff argues that the TDCPA provides a private right of action for *any person*, not just a debtor, who has suffered violations under the TDCPA. (*Id.*, at 6).

Second, Plaintiff asserts that she has standing under the DTPA pursuant to a "tie in" provision included in the TDCPA, Tex. Fin.Code Ann. § 392.404(a). (*Id.*, at 8). According to Plaintiff, "consumer" status is required for standing to bring a DTPA claim only where the terms of the relevant DTPA subsection, as incorporated into the TDCPA, specifically require it. (*Id.*, at 13). In support of her interpretation of the "tie in" provision, Plaintiff cites to two Texas Supreme Court decisions— *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378 (Tex.2000) and *Aetna Cas. and Sur. Co. v. Marshall,* 724 S.W.2d 770 (Tex. 1987)—where the court held that "consumer status is not specifically required to bring a DTPA-based cause of action under the Texas Insurance Code." (*Id.*, at 12–14). Although *Crown Life and Aetna Cas. and Sur. Co.* addressed DTPA claims brought under a different Texas statute, Plaintiff contends that the decisions support the proposition that "claimants" under "another law" need not fit the statutory definition of a "consumer" to bring a claim under the DTPA. (*Id.*, at 10). Instead, Plaintiff argues, "consumer" status is required only where the terms of a subsection of the DTPA *specifically* require it. (*Id.*, at 13).

Plaintiff also argues that, because consumers typically do not have a past relationship with third-party debt collectors, a party demonstrating a TDCPA violation will not necessarily qualify as a "consumer" under the DTPA. (*Id.*, at 10). Plaintiff posits that interpreting the TDCPA to only allow suits under the DTPA where persons qualify as "consumers" would severely constrict the TDCPA and render the tie-in provision void. (*Id.*, at 8–9).

On May 1, 2009, Defendant filed a reply and a memorandum in support of Defendant's reply to Plaintiff's response to Defendant's motion for partial summary judgment. (Instrument No. 20). Defendant argues that all relevant GC Services ac-

tions were taken in Missouri not Texas, although GC Services first created an electronic file on Plaintiff's account in the Houston office, which was later forwarded to Missouri. (*Id.*, at 3). Defendant also contends that the letters Plaintiff received from GC Services's Texas office are not the conduct she is suing over. (*Id.*, at 4). In sum, Defendant claims that Plaintiff's contacts with the Texas office are "irrelevant" and cannot serve as the basis for her TDCPA suit. (*Id.*, at 5). Defendant urges the Court to find that Plaintiff does not have standing to bring a TDCPA suit against GC Services in Texas because Plaintiff had no contact with Defendant in Texas. (*Id.*, at 10).

Further, Defendant argues that Plaintiff's reliance on the two Texas Supreme Court cases is misplaced. (*Id.*). Defendant contends that both cases involved the incorporation of a purported DTPA violation into the Texas Insurance Code, and not whether a claim asserted under the DTPA pursuant to a "tie-in" provision exempts the claimant from the "consumer" standing requirement. (*Id.*). Defendant stands by its position that, under Texas law, the DTPA protects consumers and therefore " 'consumer status' is an essential element of a DTPA cause of action." (*Id.*, at 7). According to Defendant, Plaintiff lacks "consumer" status and does not have standing to sue. (*Id.*).

## II.

### A.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986); *see also U.S. v. Arron,* 954 F.2d 249, 251 (5th Cir.1992). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the evidence rebutting the motion for summary judgment is only colorable or is not significantly probative, summary judgment should be granted. *See Id.* at 2511; *see also Thomas v. Barton Lodge, Ltd.,* 174 F.3d 636, 644 (5th Cir.1999). The summary judgment procedure, therefore, enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process continues." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 886–88, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Burge v. Parish of St. Tammany,* 187 F.3d 452, 464 (5th Cir.1999).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward 'with specific facts showing that there is a *genuine issue for trial.*'" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see Engstrom v. First Nat'l Bank,* 47 F.3d 1459, 1462 (5th Cir.1995). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson,* 477 U.S. at 242, 106 S.Ct. 2505; *see also Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992) (stating that "[t]o avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue").

The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp.,* 207 F.3d 776, 781 (5th Cir.2000). "The mere existence of a scintilla of evidence in support of the plaintiffs position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

**B.**

█ Plaintiff claims that GC Services violated the Texas Debt Collection Practices Act ("TDCPA") by using false or deceptive means to collect the debt, by threatening to contact Cushman's employer in violation of Tex. Fin.Code § 392.304(19), and by using language intended to abuse the Plaintiff in violation of Tex. Fin.Code § 392.302(1). (Instrument No. 19, at 4). Plaintiff alleges that Defendant's actions resulted in substantial disruption of her daily routine, thereby inflicting emotional and/or mental anguish damages and, further, resulted in an invasion of Cushman's privacy. (*Id.,* at 5).

The TDCPA provides a state law remedy for wrongful debt collection actions. *Prophet v. Myers,* No. H–08–0492, 2009 WL 1437799, at *5 (S.D.Tex. May 21, 2009). The TDCPA protects "consumers," defined as "an individual who has consumer debt." Tex. Fin.Code Ann. § 392.001(1) (2009). "Consumer debt" is an obligation "primarily for personal, family, or household purposes and arising from a transaction." *Id.* at § 392.001(2). A "debt collec-

tor" is "a person who directly or indirectly engages in debt collection and includes a person who sells ... forms represented to be a collection, device, or scheme intended to be used to collect consumer debts." *Id.* at § 392.001(6). "Debt collection" is the "action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* at § 392.001(5). Finally, a "third-party debt collector" refers to a "debt collector, as defined by 15 U.S.C. § 1692a(6), but does not include an attorney collecting a debt as an attorney." *Id.* at 392.001(7).

Here, Defendant concedes that GC Services "may fall within the definition of 'debt collector' under 15 U.S.C. § 1692a(6)." (Instrument No. 4, at 2). Defendant also admits that "under certain circumstances ... it may attempt to collect a 'debt' as defined by ... Texas Finance Code § 392.001(2)." (*Id.*). However, Defendant asserts that Plaintiff lacks standing to bring suit under the TDCPA because Cushman is not and never was a Texas resident. (Instrument No. 17, at 9). Defendant argues that the Texas Finance Code was intended to regulate collection activity only within Texas and avers that "allowing a plaintiff to hold a defendant liable under the Texas Finance Code for collection activities that occurred entirely outside the state of Texas is tantamount to a violation of the United States Constitution." (*Id.*).

Defendant fails to recognize that Texas residency is not required to qualify as a "consumer" under the TDCPA; in fact, having "a consumer debt" is the only prerequisite to "consumer" status. Tex. Fin.Code § 392.001(1). Further, the remedies the TDCPA affords are not limited to the actual parties to a consumer transaction. *See Campbell v. Beneficial Fin. Co. of Dallas,* 616 S.W.2d 373, 375 (Tex. App.-Texarkana 1981) ("Any person

against whom the prohibited acts are committed may maintain an action for actual damages sustained as a result of those violations."); *see also Monroe v. Frank,* 936 S.W.2d 654, 660 (Tex.App.-Dallas 1996) (holding that a debtor who obtained a bail bond to secure the release of a family friend from jail was covered under the TDCPA). Given that the TDCPA allows even non-parties to a transaction to bring suit over the transaction, it is illogical that Plaintiff, a direct victim of the alleged debt collection practices violation, would lack standing to bring suit.

Defendant's claim that "Plaintiff had no contact with Texas and none of the purported conduct took place in Texas" is simply not true. (Instrument No. 17, at 8). Defendant GC Services is a Texas corporation. (Instrument No. 17, at 6). GC Services first opened Plaintiff's account in the Houston office. (*Id.,* Exhibit 2, at 100–101). Letters sent to Plaintiff were generated in Defendant's Houston office. (*Id.,* at 108, 200–201). Plaintiff also has evidence that "Defendant initiated a 'skip tracing' process" from the Houston office. (Instrument No. 19, at 7). Although Defendant claims that Plaintiff is not suing over the "skip tracing" process, these facts demonstrate that Defendant initiated action on Plaintiff's account and continued to coordinate actions regarding her account from GC Services's "Houston General Office." Simply because Defendant later had calls placed to Plaintiff from its call center in St. Louis, Missouri does not absolve Defendant of all liability in Texas. *See also Stinson v. GC Services,* No. H–08–1244, 2008 WL 2328210, at *2 (S.D.Tex. June 4, 2008) (denying defendant's motion to dismiss where a Tennessee resident brought TDCPA, DTPA, and FDCPA claims against GC Services in Texas).

In sum, Defendant has presented no evidence that Plaintiff does not have standing to bring a claim pursuant to the TDCPA. Defendant created Plaintiff's account and initiated debt collection activity in Texas. Letters sent in furtherance of Defendant's debt collection activities were generated in Defendant's Houston office. The mere fact that Plaintiff is not a Texas resident is not sufficient reason to deny her standing to bring her claim under the TDCPA. The TDCPA, as written, is broad-sweeping and consumer friendly. The TDCPA has been held to protect "any person against whom the prohibited acts are committed," and it surely protects Plaintiff, a consumer, from debt collection practices initiated and carried out by Defendant, a Texas corporation, in its Texas office. *Ford v. City State Bank of Palacios,* 44 S.W.3d 121 (Tex.App.-Corpus Christi 2001).

Therefore, Defendant's Motion for Partial Summary Judgment is **DENIED** with respect to Plaintiff's TDCPA claim

### C.

Plaintiff claims that GC Services violated the Texas Deceptive Trade Practices ("DTPA") by making numerous material misrepresentations, which Defendant knew or should have known were false, with malicious, willful, wanton and reckless disregard for Plaintiff's rights. (Instrument No. 19, at 6). Plaintiff alleges that Defendant's material misrepresentations constitute a violation of the DTPA pursuant to Tex. Bus. & Com Code, Subchapter E, § 17.

■ The Texas Deceptive Trade Practices Act "grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex.1996); *see also Tex. Bus. & Com Code Ann.* § 17.50(a)(1) (2009). The elements of a DTPA cause of action are: (1) the plaintiff

is a consumer; (2) the defendant committed acts "in connection with the purchase or lease of any goods or services"; (3) the defendant's acts were false, misleading or deceptive; and (4) the acts were a producing cause of plaintiffs injuries. *Amstadt,* 919 S.W.2d at 649; *see also Washington v. U.S. HUD,* 953 F.Supp. 762, 777 (N.D.Tex. 1996). At issue here is whether Cushman qualifies as a "consumer" under the DTPA. Defendant claims that she does not meet the statutory definition of "consumer" and therefore does not have standing to bring her DTPA claim. (Instrument No. 17, at 4–5).

### 1.

■ The DTPA was enacted to "protect *consumers* against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty," and Plaintiff's standing to bring suit on her DTPA claim hinges on whether she qualifies as a "consumer" under the DTPA. *Amstadt,* 919 S.W.2d at 649 (emphasis added); *see* Tex. Bus. & Com Code § 17.44; *see also Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 351 (Tex.1987) (finding that consumer status is an essential element of a DTPA cause of action). The DTPA's definition of "consumer" is different from that found in the TDCPA, and the fact that Cushman is a "consumer" under the TDCPA is irrelevant in the determination of whether she qualifies as a "consumer" under the DTPA. The Texas Supreme Court has "recognized at least two requirements that must be established for a person to qualify as a consumer under the DTPA." *Sherman Simon Enter., Inc. v. Lorac Serv. Corp.,* 724 S.W.2d 13, 15 (Tex.1987). To establish DTPA "consumer" status: "(1) a person must have sought or acquired, goods or services, by purchase or lease; and (2) the goods or services, purchased or leased, must form the basis of the complaint." *Burleson*

*State Bank v. Plunkett,* 27 S.W.3d 605, 614 (Tex.App.-Waco 2000); *see also* Tex. Bus. & Com. Code § 17.45(4).

To qualify as a "consumer" for purposes of the DTPA, Plaintiff must first show that she sought or acquired goods or services by purchase or lease. *See Sherman Simon Enter.,* 724 S.W.2d at 15; *see also* Tex. Bus. & Com Code § 17.45(4). In *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980), the Texas Supreme Court had to decide whether a claimant who "sought only to borrow money" qualified as a "consumer" under the DTPA. *Id.* at 173. The Texas Supreme Court held that "money is not ... a 'good'" and "the DTPA's use of the word 'services' d[oes] not include the extension of credit, or the borrowing of money." *Id.* at 174–175.

In holding that a person who acquires a line of credit does not "seek or acquire goods," the Supreme Court of Texas first examined the statutory definition of "goods." The DTPA defines "goods" as "tangible chattels bought for use." Tex. Bus. & Com.Code § 17.45(1). Because the DTPA is part of the Texas Business and Commerce Code, the Court also looked at the Code's definition of "money," which is defined as "a medium of exchange authorized or adopted by a domestic or foreign government as apart of its currency." *Id.* at § 1.201(24). The Court then held that, "consistent with these analogous statutory provisions, ... money is not a 'tangible chattel,' or 'goods' as defined by the DTPA. Rather, money is properly characterized as a currency of exchange that enables the holder to acquire goods." *Riverside Nat'l Bank,* 603 S.W.2d at 174.

In *Riverside Nat'l Bank,* the Texas Supreme Court also held that borrowing money is not seeking or acquiring any services. *See id.* "Services" is defined as "work, labor, or services purchased or leased for use, including services furnished in connection with the sale or repair of goods." Tex. Bus. & Com.Code § 17.45(2). The court reasoned that "[m]oney, as money, is quite obviously neither work nor labor. Seeking to acquire the use of money likewise is not a seeking of work or labor." *Riverside Nat'l Bank,* 603 S.W.2d at 174. Further, the court looked to its prior decision in *Van Zandt v. Fort Worth Press,* 359 S.W.2d 893 (Tex.1962), for the appropriate definition of "services," which it defined as "action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object." *Id.* at 895. The Texas Supreme Court then extrapolated that because the prior "definition described 'services' in terms of 'action,' 'conduct,' 'performance' and 'deeds,'" the word "services" must "include[ ] an activity on behalf of one party by another ... similar in nature to work or labor." *Riverside Nat'l Bank,* 603 S.W.2d at 174. Thus, it concluded, any "attempt to acquire money, or the use of money, [i]s not an attempt to acquire services." *Id.* at 175.

Like the plaintiff in *Riverside Nat'l Bank,* Cushman's dispute centers around a line of credit, specifically, her American Express credit card. Because the Supreme Court of Texas has made it clear that money does not fall within the statutory definition of "goods" because it is not a "tangible chattel," Cushman's line of credit obtained through American Express does not qualify as "goods." *See id.* at 174. Further, even if Plaintiff were to argue that she "sought to acquire services" when she applied for her American Express credit card given the application process and the interest rate, the Supreme Court of Texas has rejected this argument as well. *See id.* at 175 (rejecting plaintiff's argument that "services existed in the lending of money").

The Texas Supreme Court's decision in *Riverside Nat'l Bank* has never been expressly overruled. *Burleson State Bank,* 27 S.W.3d at 615. However, "there are other bank customer cases that have been decided since *Riverside* in which borrowers have qualified as consumers if the money was sought to acquire a good or services." *Id.* at 614; *see, e.g., Knight v. Int'l Harvester Credit Corp.,* 627 S.W.2d 382 (Tex.1982) (finding that a bank customer qualified as a consumer because he sought financing to purchase a dump truck); *see also Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705 (Tex. 1983) (holding that a borrower who sought financing for a house qualified as a consumer).

Nonetheless, the instances where the Texas Supreme Court has found that borrowers qualified as consumers are easily distinguishable from Plaintiff's case at hand. In both *Knight* and *Flenniken,* the borrowers' motives were the same: to obtain money to acquire a specific good. In fact, in *Flenniken,* the Texas Supreme Court found that the person "did not seek to borrow money; they sought to acquire a house." *Flenniken,* 661 S.W.2d at 708. Plaintiff's case stands in stark contrast to both *Knight* and *Flenniken*; here, Plaintiff has presented no evidence that she applied for her American Express credit card to make any specific purchase. When questioned during her deposition as to why she applied for the credit card in the first place, Cushman stated that she could not remember. (Instrument No. 17, Exhibit A, at 43). She could recall no large purchase she had planned. In fact, when asked what she used the card for, Cushman stated that it was for "[g]eneral purposes." (Instrument No. 17, Exhibit A, at 45).

Accordingly, Plaintiff is bound by the Texas Supreme Court's holding that an "attempt to acquire money, or the use of money, [i]s not an attempt to acquire services" and "money is not ... a 'good.'" *Id.* at 174–175. Here, Plaintiff did not seek or acquire goods or services, as required by Tex. Bus. & Com Code § 17.45(4) for consumer status. Therefore, she does not qualify as a "consumer" and does not have standing to bring suit under the DTPA. Moreover, because Cushman has failed to demonstrate that she sought or acquired "goods" or "services," "goods or services purchased or leased" do not form the basis of her complaint. *Sherman Simon Enter.,* 724 S.W.2d at 15. Cushman does not meet the DTPA's test for "consumer" and is therefore precluded from bringing suit under the DTPA.

The Court's finding that Plaintiff fails to qualify as a consumer is consistent with the underlying purpose of the DTPA. The DTPA seeks to protect *consumers,* and the Texas Supreme Court has repeatedly emphasized the importance of "keep[ing] in mind why the Legislature created this simple, nontechnical cause of action: to protect consumers in consumer transactions. Consistent with that intent ... defendant's deceptive conduct must occur *in connection with a consumer transaction.*" *Amstadt,* 919 S.W.2d at 649 (emphasis added); *see also Home Sav. Ass'n v. Guerra,* 733 S.W.2d 134, 136 (Tex.1987) (finding that a defendant creditor "must be shown to have some connection either with the actual sales transaction or with a deceptive act related to" it); *see also Qantel Bus. Sys., Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 305 (Tex.1988) (noting that deceptive conduct that is "inextricably intertwined" with a consumer transaction may be actionable under the DTPA). Here, Plaintiff is not a consumer and therefore any action taken by Defendant is not the kind governed by the DTPA.

### 2.

Plaintiff argues that requiring her to qualify as a "consumer" as a prerequisite for standing under the DTPA creates a "logical impossibility." (Instrument No. 19, at 10). She contends that by demonstrating a TDCPA violation by a third-party debt collector she will automatically be disqualified from "consumer" status because, by definition, a debtor does not consume or acquire anything directly from a third-party debt collector. (*Id.*). Plaintiff's fear is misplaced; Plaintiff's fails to qualify as a consumer *not* because of her relationship with GC Services but rather because the underlying transaction at issue—the use of her American Express credit card or, stated more broadly, the extension of a line of credit—is not considered "goods" or "services" within the meaning of the relevant statute. *See* Tex. Bus. & Com Code § 17.45(4).

Plaintiff also claims that consumer status is in fact not required to raise a DTPA claim. (Instrument No. 19, at 8). Instead, Plaintiff argues that "mere violation of the TDCPA confers upon a party standing [to] bring an action under the DTPA." (*Id.*). In other words, Plaintiff maintains that if she has standing to bring suit under the TDCPA she also has standing to bring her DTPA action. (*Id.*). In support of her argument, Plaintiff cites only the statute itself, which states that "if a claimant is granted the right to bring a cause of action under this subchapter by another law, the claimant is not limited to recovery of economic damages only, but may recover any actual damages incurred by the claimant." Tex. Bus. & Com.Code § 17.50(h). Plaintiff then argues that Tex. Fin.Code § 392.404 acts as a "tie-in" provision allowing "claimants" under "another law" to recover "actual damages," while DTPA "consumers" are limited to a narrower category of "economic damages." (Instrument No. 19, at 11); *see also* Tex. Fin.

Code § 392.404 ("A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter.").

Plaintiff's argument that a claimant under any other law can automatically bring suit under the DTPA has not been accepted by the Texas courts. Instead, under Texas law it is clear that "[i]n all cases, a plaintiff must qualify as a 'consumer' in order to have standing to bring an action under the DTPA." *Marketic v. U.S. Bank Nat'l Assoc.*, 436 F.Supp.2d 842, 855 (N.D.Tex.2006); *see also Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App.-San Antonio 1996) (finding that consumer standing is "an essential element of a DTPA cause of action"); *see also Figueroa v. West*, 902 S.W.2d 701, 707 (Tex.App.-El Paso 1995) (noting that "the DTPA is clearly consumer protection legislation").

In *Marketic*, the plaintiff raised an argument almost identical to the one Plaintiff makes here, claiming "that § 392.404 of the Texas Finance Code states that a violation of the TDCA [Texas Debt Collection Act] also establishes a violation of the DTPA." *Marketic*, 436 F.Supp.2d at 854. However, the Texas district court found that, while "the DTPA tie-in statute, § 17.50(h) of the Business & Commerce Code, grants a private right of action under the DTPA to a claimant seeking to recover under the TDCA ... Tex. Bus. & Com.Code § 17.50(h) does *not* exempt claimants from showing that they qualify as a 'consumer' under Tex. Bus. & Com. Code § 17.45(4)." *Id.* at 854–855. (emphasis added). Citing to the Texas Supreme Court's *Riverside Nat'l Bank* opinion, the Texas district court ultimately found that the plaintiff did not qualify as a "consumer" under the DTPA because "merely obtaining a loan or an extension of credit does not qualify one as a 'consumer.'"

*Id.* at 855; *see also Prophet,* 2009 WL 1437799, at *5 (finding that plaintiff's claim failed where the DTPA claim rested on alleged violations of the TDCPA and nothing more). Accordingly, Cushman's attempt to circumvent the DTPA "consumer" requirement through use of the "tie-in" provision fails.

In an additional attempt to sustain her argument regarding the "tie-in" provision, Plaintiff analogizes her claim to the Texas Supreme Court decision in *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378 (Tex.2000). In *Crown Life,* the court examined whether a plaintiff's standing to bring suit under Article 21.21 of the Texas Insurance Code extended to allow standing under the DTPA. *Id.* at 381. The plaintiff admitted he was not a "consumer" but argued—like Cushman does here—that consumer status was not required because his DTPA claim arose through Article 21.21, not under the DTPA. The Texas Supreme Court concluded that the plaintiff did not have standing under Article 21.21 "to allege DTPA-based claims that require consumer status by their terms." *Id.* at 381. The court held that the plaintiff had to meet the "consumer" requirement to state his Article 21.21 cause of action for violation of a DTPA subsection "if the subsection either (1) specifically involves a consumer transaction, or (2) involves the misrepresentation of "goods or services" acquired by the plaintiff." *Id.* at 386.

Here, Plaintiff seeks to bring a claim under § 17 of the DTPA, which is incorporated in its entirety into TDCPA § 329.404. *See* Tex. Fin.Code § 329.404(a). The Texas Supreme Court has made it clear that "the [DTPA's] rule of liberal interpretation should not be applied in a manner that negates the statutory definition of the word 'consumer.'" *Riverside Nat'l Bank,* 603 S.W.2d at 173. Plaintiff may be correct that *Crown Life* stands for the proposition that when suit is brought through a "tie-in" provision, "consumer" status may not be required where an incorporated subsection of the DTPA does not specifically require it. However, here the relevant section of the DTPA, section 17, does require "consumer" status. Thus, Plaintiff's argument that she is not required to have "consumer" status to bring suit under the DTPA fails.

In sum, Cushman's relationship with GC Services was not in connection with any transaction in goods or services, and thus Plaintiff fails to meet the requirement that "a person who brings a private lawsuit under section 17.50 must be a consumer, as defined in section 17.45(4)." *Id.* Plaintiff does not qualify as a consumer under the statute and the "tie-in" provision in the TDCPA does not exempt her from the requirement of consumer status.

Accordingly, Plaintiff does not have standing to bring a claim under the DTPA, and the Court **GRANTS** Defendant's Motion for Partial Summary Judgment with respect to Plaintiff's DTPA claim.

### III.

Defendant's Motion for Partial Summary Judgment is **GRANTED** with respect to Plaintiff's DTPA claim and **DENIED** with respect to Plaintiff's TDCPA claim (Instrument # 17).

The Clerk shall enter this Order and provide a copy to all parties.