**Reversed and Rendered and Opinion filed July 10, 2012.**



In The

# Fourteenth Court of Appeals

NO. 14-10-01157-CV

**JERRY DOHALICK, Appellant**

**V.**

**MOODY NATIONAL BANK, Appellee**

On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2008-08162

## O P I N I O N

This case presents a question of first impression regarding the statutory construction of Chapter 156 of the Texas Finance Code, which permits an "aggrieved person" to recover certain damages from an unlicensed person who receives a fee for acting as a mortgage broker. The trial court found that the claimant in this case, a bank, was an "aggrieved person" under Texas Finance Code section 156.406(b) based on the trial court's determination that the bank paid the appellant/defendant a fee for acting as a mortgage broker without that individual having an active license or being exempt under the statute. We conclude that, to be an aggrieved person under section 156.406(b), the

claimant must pay all or part of the mortgage broker's fee. But, we conclude that the trial evidence is legally insufficient to support a finding that the bank paid any part of this fee. Accordingly, we reverse the trial court's judgment in part and render judgment that the bank take nothing against the appellant.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Savoy Custom Homes, L.P. was a builder of custom homes in the Houston area. The principals of Savoy were Igor Dukhin, a/k/a Gary Duncan, and Thad Moore. Duncan and Moore contacted appellant/defendant Jerry Dohalick regarding Savoy's need for another line of credit to finance the construction of additional houses. Dohalick agreed to help Savoy seek additional financing, and Savoy agreed to pay Dohalick a fixed fee of one percent of the amount of the line of credit that Savoy obtained with Dohalick's assistance.

Dohalick contacted several lenders seeking to obtain additional financing for Savoy. As part of these efforts Dohalick contacted Tina McGriff of appellee/plaintiff Moody National Bank (the "Bank"). Dohalick introduced McGriff to Duncan and Moore and, at various times, Dohalick served as an intermediary between Savoy and the Bank. In May 2007, the Bank approved an "officer guidance line" for Savoy in the amount of five million dollars. But, before Savoy could receive any financing for a particular construction project, Savoy was required to present various documents to the Bank for approval. If the Bank approved, then the Bank and Savoy would need to execute various loan documents regarding the financing of the particular project before Savoy could obtain any funds from the Bank.

In an effort to obtain financing for the construction of one house, Savoy assembled documents to present to the Bank. Duncan gave these documents to Dohalick, and Dohalick submitted them to the Bank. These documents allegedly contained false or misleading statements. The Bank approved a loan to Savoy for this project. Savoy executed a promissory note and deed of trust on October, 15, 2007, and the Bank and

2

Savoy entered into various agreements regarding this loan (the "Loan"). Under these agreements, the Bank was to make an initial advance of $700,000 plus the loan closing costs. After the initial advance, upon written request by Savoy and approval by the Bank, the Bank would make additional advances. On October 16, 2007, Savoy received the initial advance from the Bank in the amount of approximately $719,000. Two days later, Savoy submitted a written request for an additional advance of $65,000. The Bank approved this request and Savoy received the requested funds on the same day. The following day, on October 19, 2007, Savoy paid Dohalick $50,000 as the fee for his services. Though the evidence was conflicting, some evidence at trial showed that Savoy paid Dohalick's fee by using $50,000 of the loan proceeds that Savoy had received from the Bank the day before. It is undisputed that during the rendition of his services on behalf of Savoy, Dohalick did not hold an active mortgage broker license under Chapter 156 of the Finance Code, nor did Dohalick fall within the exemptions contained in Chapter 156.[1]

After making two or three interest-only payments on the Loan, Savoy defaulted, and the Bank eventually foreclosed on its deed-of-trust lien on the property on which the house was to be constructed. In January 2008, Savoy, Duncan, Moore, and others allegedly engaged in a fraudulent scheme involving check kiting using Savoy's checking account at the Bank. When the Bank made inquiries regarding matters related to the alleged check kiting, Dohalick allegedly responded on Savoy's behalf.

The Bank filed suit in the trial court below against Savoy, Duncan, Moore, Dohalick and others. The Bank alleged, among other things, that (1) Savoy submitted fraudulent financial documents to the Bank to obtain approval of the Loan, (2) the defendants were involved in check kiting or a check-fraud scheme that caused the Bank to sustain damages; (3) Dohalick and Duncan engaged in a scheme to obtain funds from the Bank to pay Dohalick's fee; (4) Duncan falsely represented to the Bank that the $65,000 advance was for "soft costs"; and (5) in response to the Bank's inquiries relating

---

[1] Unless otherwise specified, all statutory references in this opinion are to the Texas Finance Code.

to the alleged check kiting, Dohalick made false representations to the Bank. The Bank asserted fraud, in addition to other claims, against all defendants, including Dohalick. The Bank also asserted a claim against Dohalick under section 156.406(b) to recover damages based upon the fee Dohalick received in connection with the Loan.

When the trial court called the case to trial, the Bank announced that it had non-suited and was no longer pursuing any claims against Dohalick other than the claim under section 156.406(b). Following a bench trial, the trial court rendered judgment in the Bank's favor against various defendants. Based on the Bank's claim under section 156.406(b), the trial court awarded the Bank $50,000 in damages plus prejudgment and postjudgment interest. In its findings of fact and conclusions of law, the trial court found as follows:

- The Loan is a "mortgage loan" as defined in section 156.002.
- Dohalick acted as a "mortgage broker" as defined in section 156.002.
- Dohalick received a fee of $50,000 for acting as a mortgage broker in connection with the Loan.
- Dohalick did not have an active mortgage broker's license at the time of the Loan.
- Dohalick was not exempt from having a mortgage broker's license under Chapter 156 at the time of the Loan.
- Savoy requested that Dohalick's fee be paid by the Bank.
- Dohalick requested that his fee be paid by the Bank.
- The Bank paid Dohalick's fee of $50,000.
- The Bank is an "aggrieved person" under section 156.406(b) because the Bank paid Dohalick's fee.
- The Bank is entitled to damages in the amount of $50,000 from Dohalick under section 156.406(b).

## II. ISSUES PRESENTED

On appeal, Dohalick asserts that (1) the evidence is legally insufficient to support the trial court's finding that the Bank paid Dohalick's fee and therefore the Bank cannot be an aggrieved person under section 156.406(b); (2) the Loan was not a "mortgage loan"

4

as defined in section 156.002; (3) regarding the Loan, Dohalick did not act as a "mortgage broker" as defined in section 156.002; and (4) Chapter 156 should not be applied to Dohalick.

## III. STANDARD OF REVIEW

Dohalick challenges the legal sufficiency of the evidence supporting the trial court's finding that the Bank paid Dohalick's fee. When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

## IV. ANALYSIS

**A.    Who may be an "aggrieved person" under Texas Finance Code section 156.406(b)?**

Under his first issue, Dohalick argues that Bank cannot be an aggrieved person under section 156.406(b). The version of this statute applicable to the case under review provides as follows:

> A person who received money, or the equivalent of money, as a fee or profit because of or in consequence of the person acting as a mortgage broker or loan officer without an active license or being exempt under this chapter is liable for damages in an amount that is not less than the amount of the fee or profit received and not to exceed three times the amount of the fee or profit received, as may be determined by the court. An aggrieved person may recover damages under this subsection in a court.

Act of May 25, 1999, 76th Leg., R.S., ch. 1254, § 2, 1999 Tex. Gen. Laws 4334, 4346

(current version at Tex. Fin. Code Ann. § 156.406(b) (West 2012)).[2] The statute does not define the term "aggrieved person." *See id.* The parties have not cited and research has not revealed any case addressing who may be an aggrieved person under this statute.

We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex. 1989). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id.*

Under the plain meaning of section 156.406(b), the damages that an aggrieved person may recover are "damages in an amount that is not less than the amount of the fee or profit received and not to exceed three times the amount of the fee or profit received, as may be determined by the court." Act of May 25, 1999, 1999 Tex. Gen. Laws at 4346. An "aggrieved person" may recover these damages based upon the mortgage broker's receipt of "money, or the equivalent of money, as a fee or profit because of or in consequence of the person acting as a mortgage broker or loan officer without an active license or being exempt under [Chapter 156]." *Id.* Because this is the conduct by which the claimant is aggrieved, we conclude that to be an aggrieved person under section 156.406(b), the claimant must have paid all or part of the fee or profit to the unlicensed mortgage broker or loan officer.

This construction is supported by a sister court of appeals's construction of a

---

[2] Effective September 1, 2011, the Texas Legislature amended this section by deleting "mortgage broker or loan officer" and replacing that language with "residential mortgage loan originator." *See* Act of May 25, 2011, 82nd Leg., R.S., ch. 655, §§ 37, 68, 2011 Tex. Sess. Law Serv. 1562, 1580, 1589 (codified at Tex. Fin. Code Ann. § 156.406(b) (West 2012)).

statute containing substantially similar language in the context of commissions paid to an unlicensed real estate broker. *See Holloman v. Denson*, 640 S.W.2d 417, 419–20 (Tex. App.—Waco 1982, writ ref'd n.r.e.) (construing predecessor statute to Texas Occupations Code section 1101.754(a) (West 2012) (stating that "[a] person who receives a commission or other consideration as a result of acting as a broker or salesperson without holding a license or certificate of registration under this chapter is liable to an aggrieved person for a penalty of not less than the amount of money received or more than three times the amount of money received")). In *Hollomon* the Tenth Court of Appeals construed a statute providing that a person who received a commission for acting as a real estate broker and who did not have the required license was liable to "an aggrieved person" in an amount not less than the amount of the commission and not more than three times this amount, as determined by the trial court. *See Holloman*, 640 S.W.2d at 419–20. The *Holloman* court held that the evidence was legally insufficient to support a finding that the plaintiffs were aggrieved persons in a transaction in which the plaintiffs did not pay any part of the unlicensed real estate broker's commission. *See id*. at 420. As to this transaction, the *Holloman* court held, the man who paid the commission was the aggrieved person, and the plaintiffs were not aggrieved persons as a matter of law. *See id*.

In another part of its opinion, the *Hollomon* court held that the plaintiffs were aggrieved persons as to another transaction in which the plaintiffs paid the unlicensed broker's commission. *See id*. The *Holloman* court rejected the broker's contention that he should not be liable because there was no complaint about the quality of the services that he had rendered. *See id*. According to the *Holloman* court, the purpose of the statute was to penalize persons who acted as real estate brokers without a license. *See id*. The *Holloman* court concluded that under the statute, a person was aggrieved by paying a commission to a real estate broker who did not have a required license, rather than by deficiencies in the services rendered by the broker. *See id*.

In this appeal, the Bank argues that this court should be guided by the following definition of "aggrieved party" or "person aggrieved": "[a] party entitled to a remedy;

esp., a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment." BLACK'S LAW DICTIONARY 1232 (9th ed. 2009). This definition supports this court's construction of section 156.406(b), under which (1) an "aggrieved person" is a person entitled to the remedy of damages in an amount that is not less than the amount of the fee or profit received and not to exceed three times the amount of the fee or profit received; and (2) an "aggrieved person" is a person whose rights have been adversely affected by the mortgage broker or loan officer's receipt of a fee or profit as compensation for services that the broker or officer was not legally permitted to perform given the absence of a required license. The term "aggrieved person" may be used in many contexts, and its meaning may be shaped by the action through which the person is aggrieved and the remedy provided to the person aggrieved in this manner.

The Bank asserts that the plain meaning of "aggrieved person" includes "any person who has suffered, or will suffer, injury." We disagree that this term has such a broad meaning in the context of section 156.406(b). As discussed above, the statute specifies the conduct by which the person is aggrieved and the remedy provided to the aggrieved person. The Bank cites Texas Property Code section 301.003(1) (West 2012) (defining "Aggrieved person" to include "any person who (A) claims to have been injured by a discriminatory housing practice; or (B) believes that the person will be injured by a discriminatory housing practice that is about to occur"). This section of the Property Code does not apply to the case under review and does not support the broad definition of "aggrieved person" proposed by the Bank.

The Bank also cites a line of cases addressing who has standing to seek judicial review of administrative actions. *See, e.g., Scott v. Board of Adjustment*, 405 S.W.2d 55, 56 (Tex. 1966) (stating that "[w]here the statute requires that the person be interested, affected, or aggrieved, or (in the absence of a statute) where the common law rule requiring the showing of particular injury or damage is controlling, the plaintiff must allege and show how he has been injured or damaged other than as a member of the

8

general public in order to enjoin the actions of a governmental body"). These cases deal with persons aggrieved by administrative actions and the remedy of judicial review. *See id.* Because of the significantly different context in which the term is used, we do not find these cases to be particularly helpful in construing section 156.406(b).[3]

For the foregoing reasons, we conclude that to be an aggrieved person under section 156.406(b), the claimant must have paid all or part of the fee or profit to the unlicensed mortgage broker or loan officer. The trial court apparently construed the statute in the same manner given that the trial court found the Bank was an aggrieved person because it paid Dohalick's fee. We now address this finding.

**B.     Is the evidence legally sufficient to support the trial court's finding that the Bank paid the mortgage broker's fee?**

Though there was some evidence at trial indicating that Savoy paid Dohalick's fee without using proceeds from the Loan, there was legally sufficient evidence to support a finding that on October 19, 2007, Savoy paid Dohalick the $50,000 fee by using some of the loan proceeds that Savoy had received from the Bank the day before. But, the record contains no evidence that the Bank paid any part of Dohalick's fee directly with its own money. There is a significant difference between a bank paying a fee to a broker and a bank lending money under a promissory note to a borrower who then uses the loan proceeds to pay the broker a fee. In the former scenario, the bank pays the fee. In the latter scenario, even though the borrower uses loan proceeds obtained from the bank, the borrower, not the bank, pays the fee to the broker.

The Bank argues that the evidence is legally sufficient to support the trial court's finding that the Bank paid Dohalick's fee based upon evidence that:

- Dohalick asked the Bank to pay his fee.
- The Bank refused to pay Dohalick's fee and stated that it did not fund loans for the

---

[3] The Bank also argues that the term "aggrieved person" should not be construed to be limited only to persons who satisfy the definition of "mortgage applicant." We agree that this term is not so limited, but this conclusion does not mandate acceptance of the Bank's proffered definition of "aggrieved person."

purpose of paying broker's fees.

- Savoy, Dohalick's client, tried to figure out how to pay Dohalick's fee by duping the Bank into paying the fee.

- Duncan asked an employee of the Bank whether he could inflate "soft costs" in a request for an advance under the Loan in order to improperly use the funds to pay Dohalick's fee.

- Duncan then submitted a request for an advance in the amount of $65,000 for "soft costs" stating explicitly that the money was sought to "take care of Jerry [Dohalick]."

- A vice president of the Bank testified that Dohalick's fee would not be paid by the Bank and that he did not authorize payment of Dohalick's fee.

- Savoy paid Dohalick's fee one day after the Bank sent funds to Savoy in connection with Savoy's request for an advance to "take care of Jerry."

Presuming for the sake of argument that the evidence supports each of the foregoing statements, under the familiar legal-sufficiency standard of review, this evidence would not enable reasonable and fair-minded people to find that the Bank paid Dohalick's fee. Even if Savoy breached its loan agreement in requesting the $65,000 advance and even if Savoy, Duncan, and Dohalick committed fraud in inducing the Bank to make this advance, this conduct is not relevant to a damage claim under section 156.406(b), and this conduct would not mean that the Bank paid Dohalick's fee. Though such conduct might support various claims by the Bank against Dohalick other than a claim under section 156.406(b), the Bank nonsuited and elected not to pursue such claims.

The Bank argues that the record contains evidence that Savoy "did not pay Dohalick's fee from its own funds." But the evidence cited by the Bank shows that Savoy used proceeds from the Loan to pay Dohalick's fee. The Bank overlooks the fact that, once it advanced funds under the Loan to Savoy, the funds were Savoy's funds.[4] *See In re Sacramento Real Estate Corp.*, 201 B.R. 225, 229–30, 233 (Bankr. N.D. Ill. 1996) (holding that debtor, not bank, paid the property-tax redemption amount, even

---

[4] The record contains no evidence that Savoy was required by the Bank to use some or all of the $65,000 in loan proceeds to pay Dohalick's fee. Even if there were such evidence, Savoy still would be using its money to pay Dohalick's fee, and Savoy, not the Bank, would be paying the fee.

10

though debtor paid this amount using proceeds of loan from the bank). Considering the evidence in the light most favorable to the finding, indulging every reasonable inference that would support it, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, the trial evidence would not enable reasonable and fair-minded people to find that the Bank paid all or any part of Dohalick's fee. *See City of Keller,* 168 S.W.3d at 823, 827. Therefore, the evidence is legally insufficient to support the trial court's finding that the Bank paid Dohalick's fee or to support a finding that the Bank paid any part of this fee. *See id.*

## V. CONCLUSION

For the purposes of our analysis, we have presumed, without deciding, that (1) the Loan was a "mortgage loan" as defined in section 156.002; (2) Dohalick acted as a "mortgage broker" as defined in section 156.002; and (3) Dohalick received the $50,000 fee because of or in consequence of Dohalick's acting as a mortgage broker without an active license and without being exempt under Chapter 156. But, even operating under these presumptions, the trial court could not award the Bank damages under section 156.406(b) unless the Bank paid all or part of Dohalick's fee. Though the trial court found that the Bank paid all of this fee, the trial evidence is legally insufficient to support this finding or to support a finding that the Bank paid any part of Dohalick's fee. Because the evidence is legally insufficient to show that the Bank is an "aggrieved person," the Bank cannot recover under section 156.406(b). Though the Bank may have been aggrieved by Savoy's failure to pay its debt to the Bank under the loan documents or by Savoy's failure to pay the Bank's judgment against Savoy, the Bank was not aggrieved by (1) Dohalick's failure to obtain the license necessary for him to perform services for Savoy as a mortgage broker or (2) Savoy's payment of the fee that Dohalick charged Savoy for acting as a mortgage broker without an active license or an applicable exemption. Accordingly, we sustain Dohalick's first issue, reverse the trial court's judgment to the extent that the trial court rendered judgment against Dohalick, and we

11

render judgment that the Bank take nothing against Dohalick.[5]

/s/    Kem Thompson Frost
         Justice

Panel consists of Justices Frost, Seymore, and Jamison.

---

[5] We need not and do not address Dohalick's second, third, and fourth issues.