**Concurring opinion issued May 14, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 12-00563-CV

————————————

**BRIAN SHANKLIN AND TODD RIMMER, Appellants**

**V.**

**BASSOE OFFSHORE (USA) INC., MIKE SMITH,
AND JONATHAN FAIRBANKS, Appellees**

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Case No. 2009-14340**

---

## CONCURRING OPINION

The majority's entire discussion of Real Estate License Act standing is dicta:

the opinion expressly acknowledges that "even if the trial court erred in concluding

that Shanklin and Rimmer lacked standing, its subsequent findings after a bench

trial preclude a reversal of the partial summary judgment." I agree that the outcome of the trial on the merits is determinative of this appeal, and it requires that we affirm. But I do not agree with the majority's unnecessary frolic into uncharted legal territory on the subject of RELA standing.

Even if it were necessary to reach the standing issue, I disagree with the majority's interpretation of the statute. The allegations brought in this case by appellants Shanklin and Rimmer, if true, would make them "aggrieved persons" for purposes of the implied right of action under the RELA. *See* TEX. OCC. CODE ANN. § 1101.754(b). These claimants are not harmed by the majority's restrictive interpretation of the RELA private cause of action, but a future claimant may be. Accordingly, I write to explain my disagreement with the majority's conclusion that to be an "aggrieved person" eligible to invoke the private cause of action, a person must have paid a fee to another person improperly acting as a real estate broker.

## I. Bassoe acted as an unlicensed real estate broker

Under the RELA, a person is a "broker" if he "negotiates or attempts to negotiate the . . . purchase . . . of real estate" and "performs" such actions "for another person" and "in exchange for a commission or other valuable consideration or with the expectation of receiving a commission or other valuable consideration." TEX. OCC. CODE ANN. § 1101.002(1)(A)(iii). The statute further provides that "[a]

2

person *acts as a broker* . . . under [the RELA] if the person, with the expectation of receiving valuable consideration, directly or indirectly performs or offers, attempts, or agrees to perform for another person any act described by Section 1101.002(1), as a part of a transaction or as an entire transaction." *Id.* § 1101.004 (emphasis supplied). A person or business entity is prohibited from acting as a broker without holding a license. *Id.* § 1101.351(a), (a-1).

For purposes of their standing argument, appellees Bassoe, Smith, and Fairbanks (hereinafter collectively referenced as "Bassoe") concede that they were engaged to act as Shanklin and Rimmer's broker in their attempt to purchase the Pride assets, including real property located in Huoma, Louisiana. Shanklin and Rimmer alleged and the trial court found that Bassoe indicated its expectation of a fee for brokering the transaction. But Bassoe in its capacity as business entity lacked a real estate brokerage license, and Smith and Fairbanks likewise lacked broker licenses in their individual capacities. Taking the plaintiffs' allegations as true, we thus assume that Bassoe violated the RELA by acting as a broker on the appellants' behalf.

## II.    RELA's implementing regulations

The RELA establishes a private cause of action to remedy injuries resulting from violations of the prohibition against acting as a broker without a license. The statute provides that if "[a] person . . . receives a commission or other

3

consideration as a result of acting as a broker . . . without holding a license or certificate of registration" under the RELA, that person "is liable to an aggrieved person for a penalty of not less than the amount of money received or more than three times the amount of money received." *Id.* § 1101.754(a). The RELA imposes numerous requirements upon licensed real estate brokers, all of which inform the question presented in this case about who might qualify as an "aggrieved party" for purposes of bringing a private cause of action under the RELA.

To be eligible to receive a license under the RELA, a person must "satisfy the [Texas Real Estate Commission] as to the applicant's honesty, trustworthiness, and integrity." *Id.* § 1101.354(2). The applicant must "complete the required courses of study, including any required core real estate courses prescribed under [the RELA]." *Id*. § 1101.354(4); *see also id.* §§ 1101.356, .357, .359 (experience and education requirements to obtain a broker license). The "core real estate courses" include "agency law," which subsumes as one of its subtopics "an agent's duties, including fiduciary duties." *Id*. § 1101.003(1)(D). To obtain a license, a business entity must designate a managing officer who is a licensed broker as its agent for purposes of the RELA. *Id.* § 1101.355.[1] These provisions serve to

---

[1]     In addition, the RELA ensures the financial accountability of licensed business entities by requiring that they "provide proof that the entity maintains errors and omissions insurance with a minimum annual limit of

4

ensure that any person or entity licensed as a broker has satisfied minimum standards of character and education deemed necessary to provide real estate brokerage services.

To facilitate the regulation of real estate brokers, the RELA established the Texas Real Estate Commission. *See id.* §§ 1101.051–.059. The general powers and duties of the TREC include administering the RELA and adopting and enforcing rules necessary to accomplish that charge. *Id.* § 1101.151(a)(1), (b)(1). The TREC is also authorized to "establish standards of conduct and ethics" for persons licensed under the RELA, both to "fulfill the purposes of" and to "ensure compliance with" the statutory scheme. *Id.* § 1101.151(b)(2). The TREC is statutorily authorized to "file a complaint and conduct an investigation as necessary" to enforce the RELA or rules adopted under the RELA. *Id.* § 1101.204(a).

The TREC has indicated that its understanding of the general legislative intent of the RELA "to provide protection for the public in its dealings with real estate agents." TEX. REAL ESTATE COMM'N, THE HISTORY OF THE REAL ESTATE LICENSE ACT, *available at* http://www.trec.texas.gov/pdf/rela/HistoryOfRELA.pdf. To that end, the rules adopted by the TREC and codified in Title 22, Part 23 of the

---

$1 million for each occurrence if the designated agent owns less than 10 percent of the business entity." TEX. OCC. CODE ANN. § 1101.355(a)(2).

Texas Administrative Code include "Canons of Professional Ethics and Conduct" applicable to the profession. The ethical canons include, among other things, rules relating to fidelity and integrity:

**RULE § 531.1 Fidelity**

A real estate broker or salesperson, while acting as an agent for another, is a fiduciary. Special obligations are imposed when such fiduciary relationships are created. They demand:

(1) that the primary duty of the real estate agent is to represent the interests of the agent's client, and the agent's position, in this respect, should be clear to all parties concerned in a real estate transaction; that, however, the agent, in performing duties to the client, shall treat other parties to a transaction fairly;

(2) that the real estate agent be faithful and observant to trust placed in the agent, and be scrupulous and meticulous in performing the agent's functions;

(3) that the real estate agent place no personal interest above that of the agent's client.

**RULE § 531.2 Integrity**

A real estate broker or salesperson has a special obligation to exercise integrity in the discharge of the licensee's responsibilities, including employment of prudence and caution so as to avoid misrepresentation, in any wise, by acts of commission or omission.

22 TEX. ADMIN. CODE §§ 531.1–.2 (Canons of Professional Ethics and Conduct). In addition, every active real estate broker licensed by the TREC is required to display in a prominent location in each place of business a consumer information form which provides a public notice designed to facilitate the submission to the

6

commission of consumer complaints about real estate brokers. TEX. REAL ESTATE COMM'N, CONSUMER INFORMATION FORM 1-1, *available at* http://www.trec.texas.gov/pdf/forms/miscellaneous/consumerinformationform.pdf; *see also* TEX. OCC. CODE ANN. § 1101.202(a) ("The commission by rule shall establish methods by which consumers and service recipients are notified of the name, mailing address, and telephone number of the commission for the purpose of directing a complaint to the commission."); 22 TEX. ADMIN. CODE § 531.18 (Canons of Professional Ethics and Conduct).

"A broker who represents a party in a real estate transaction . . . is that party's agent." TEX. OCC. CODE ANN. § 1101.557(a).[2] Such a broker "shall, at a minimum, answer the party's questions and present any offer to or from the party." *Id.* § 1101.557(b)(3). The RELA also requires that a licensed broker provide a written notice to the represented party to a real estate transaction "at the time of the first substantive dialogue with the party." *Id.* § 1101.558(c). The required notice states:

> "Before working with a real estate broker, you should know that the duties of a broker depend on whom the broker represents. If you are . . . a prospective buyer or tenant (buyer), you should know that

---

[2] For these purposes, "'Party' means a prospective buyer, seller, landlord, or tenant or an authorized representative of a buyer, seller, landlord, or tenant, including a trustee, guardian, executor, administrator, receiver, or attorney-in-fact. The term does not include a license holder who represents a party." TEX. OCC. CODE ANN. § 1101.551(2).

7

the broker who lists the property for sale or lease is the owner's agent. A broker who acts as a subagent represents the owner in cooperation with the listing broker. *A broker who acts as a buyer's agent represents the buyer.* A broker may act as an intermediary between the parties if the parties consent in writing. A broker can assist you in locating a property, preparing a contract or lease, or obtaining financing without representing you. *A broker is obligated by law to treat you honestly.*

"IF THE BROKER REPRESENTS THE OWNER: The broker becomes the owner's agent by entering into an agreement with the owner, usually through a written listing agreement, or by agreeing to act as a subagent by accepting an offer of subagency from the listing broker. A subagent may work in a different real estate office. A listing broker or subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first. *The buyer should not tell the owner's agent anything the buyer would not want the owner to know because an owner's agent must disclose to the owner any material information known to the agent.*

"IF THE BROKER REPRESENTS THE BUYER: The broker becomes the buyer's agent by entering into an agreement to represent the buyer, usually through a written buyer representation agreement. *A buyer's agent can assist the owner but does not represent the owner and must place the interests of the buyer first.* The owner should not tell a buyer's agent anything the owner would not want the buyer to know because *a buyer's agent must disclose to the buyer any material information known to the agent.*

"IF THE BROKER ACTS AS AN INTERMEDIARY: A broker may act as an intermediary between the parties if the broker complies with The Texas Real Estate License Act. *The broker must obtain the written consent of each party to the transaction to act as an intermediary.* The written consent must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. *The broker is required to treat each party honestly and fairly* and to comply with The Texas Real Estate License Act. A broker who acts as an intermediary in a transaction: (1) shall treat all parties honestly; (2) may not disclose that the owner will accept a price less than the asking price unless authorized in

writing to do so by the owner; (3) may not disclose that the buyer will pay a price greater than the price submitted in a written offer unless authorized in writing to do so by the buyer; and (4) may not disclose any confidential information or any information that a party specifically instructs the broker in writing not to disclose unless authorized in writing to disclose the information or required to do so by The Texas Real Estate License Act or a court order or if the information materially relates to the condition of the property. With the parties' consent, a broker acting as an intermediary between the parties may appoint a person who is licensed under The Texas Real Estate License Act and associated with the broker to communicate with and carry out instructions of one party and another person who is licensed under that Act and associated with the broker to communicate with and carry out instructions of the other party.

"*If you choose to have a broker represent you, you should enter into a written agreement with the broker that clearly establishes the broker's obligations and your obligations*. The agreement should state how and by whom the broker will be paid. You have the right to choose the type of representation, if any, you wish to receive. Your payment of a fee to a broker does not necessarily establish that the broker represents you. If you have any questions regarding the duties and responsibilities of the broker, you should resolve those questions before proceeding."

*Id.* § 1101.558(d) (emphasis supplied in italics).

Finally, the RELA generally provides that "[a] licensed broker is liable to the commission, the public, and the broker's clients for any conduct engaged in under this chapter by the broker." *Id.* § 1101.803.

III. **Interpretation of the RELA's private cause of action for "aggrieved persons"**

The foregoing regulations demonstrate that the RELA is concerned with the protection of the general public and anyone who does business with a broker in a

real estate transaction, not merely those who ultimately pay a commission to a broker. The appellants' allegations in this case thus fall squarely within the zone of consumer protection that the RELA was intended to provide. Shanklin and Rimmer claim that after engaging Bassoe to act as their real estate broker, they were harmed by Bassoe's failure to perform its duties as required under the RELA. Instead of timely answering questions and faithfully pursuing Shanklin and Rimmer's interests, Bassoe is alleged to have actively promoted the acquisition of Pride's assets on behalf of another client, Blake. Bassoe is also accused of misleading Shanklin and Rimmer by representing that Pride was merely too busy to address their offer when Bassoe knew that Pride would not consider them as qualified buyers. Bassoe failed to disclose this information to Shanklin and Rimmer, although it knew that they were not dealing with other brokers or Pride directly to pursue the acquisition.

All of these allegations, if true, suggested that Bassoe acted as Shanklin and Rimmer's real estate broker and breached a fiduciary duty arising from that relationship. *See, e.g.*, 22 TEX. ADMIN. CODE § 531.1. If Bassoe had been a loyal agent, Shanklin and Rimmer contend that they could have attempted to address Pride's concerns. Likewise, if Bassoe had refused to act as their broker due to their lack of a real estate license, a loyal broker could have been engaged and injury possibly avoided. Thus, the alleged harm was of the kind which RELA is intended

10

to prevent against by requiring a license for anyone who expects to receive a commission for the sale of real estate.

The majority nevertheless concludes that the appellants are not "aggrieved persons" as contemplated by the RELA, solely because the appellees ultimately collected their fee from another party. I disagree with the majority's narrow interpretation. When reading statutes, we ascertain and give effect to the legislature's intent, as drawn from the plain meaning of the words of the statute. *See, e.g.*, *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012). Nothing in the text of section 1101.754 confines the concept of "aggrieved parties" to the parties who actually paid the consideration to the offending unlicensed broker.

The majority focuses upon the payment of a commission as the operative fact that makes one a possibly "aggrieved person." But the text of section 1101.754 relies on the receipt of a commission or other compensation only as the predicate condition that makes a broker an *eligible defendant*, without further limitation as to the source of the payment.[3] The question presented by this

---

[3]     *Cf. Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 706 (Tex. 1983) (noting, with respect to the statutory definition of "consumer" under the Deceptive Trade Practices Act, that it "only describes the class of persons entitled to bring suit . . . it does not define the class of persons subject to liability," and further noting that the "range of possible defendants is limited only by" specific statutory exemptions).

appeal is more directly concerned with the class of *eligible plaintiffs*—i.e., who qualifies as an "aggrieved person"? If the legislature had intended to restrict the class of "aggrieved persons," it knew how to do so explicitly, as it did for purposes of recoveries from the Real Estate Recovery Trust Account established in the RELA. In that part of the RELA, the statute expressly provides: "An aggrieved person is entitled to reimbursement from the trust account if a person described by Section 1101.601 engages in conduct described by Section 1101.652(a)(3) or (b) or 1101.653(1), (2), (3), or (4)." TEX. OCC. CODE ANN. § 1101.602. Unlike the right of recovery described in Subchapter M, there is no statutory limitation on the general reference to an "aggrieved person" entitled to file a private right of action under section 1101.754.[4]

Distinguished commentators have recently observed that "[p]erhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 167 (2012). Consideration of the full

---

[4]     *See also* TEX. BUS. & COM. CODE ANN. § 17.50 (confining private DTPA cause of action to defined class of "consumers"); *Riverside Nat. Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex. 1980) ("To ignore the Legislature's definition of 'consumer,' and permit any aggrieved person to maintain a private cause of action under the DTPA, ignores the well established presumption that legislative choice of words is such that every word has meaning.").

scope of the RELA regulatory scheme supports a broader understanding of the class of persons who may be considered as "aggrieved" due to the unauthorized practice of real estate brokerage by unlicensed persons or entities,[5] and thus also supports a broader scope of potential liability for violating the RELA.[6] In contrast, the majority's interpretation of "aggrieved person" can only be justified by reading section 1101.754 in complete isolation from the remainder of the RELA.

---

[5] *See, e.g.*, TEX. OCC. CODE ANN. § 1101.558 ("at the time of the first substantive dialogue with the party," the broker must provide written notice that "[a] broker is obligated by law to treat you honestly," that "[a] buyer's agent . . . must place the interests of the buyer first," and that "[i]f you choose to have a broker represent you, you should enter into a written agreement with the broker that clearly establishes the broker's obligations and your obligations"); 22 TEX. ADMIN. CODE § 531.1 ("A real estate broker . . . while acting as an agent for another, is a fiduciary. . . . [1] the primary duty of the real estate agent is to represent the interests of the agent's client, and the agent's position, in this respect, should be clear to all parties concerned in a real estate transaction . . . [2] the real estate agent [must] be faithful and observant to trust placed in the agent, and be scrupulous and meticulous in performing the agent's functions . . . [3] the real estate agent [must] place no personal interest above that of the agent's client."); *Id.* § 531.2 ("A real estate broker . . . has a special obligation to exercise integrity in the discharge of the licensee's responsibilities, including employment of prudence and caution so as to avoid misrepresentation, in any wise, by acts of commission or omission.").

[6] *Cf.* TEX. OCC. CODE ANN. § 1101.803 (establishing broker liability "to the commission, the public, and the broker's clients for any conduct engaged in under this chapter by the broker").

**IV.** *Holloman* **and** *Dohalick* **are distinguishable**

In reaching its conclusion about the meaning of "aggrieved person," the majority relies upon two cases from other courts of appeals, both of which are distinguishable.

Thirty years ago the Waco Court of Appeals decided *Holloman v. Denson*, which concerned two real-estate transactions involving a subdivision owner, Holloman. 640 S.W.2d 417, 419 (Tex. App.—Waco 1982, writ ref'd n.r.e.). Both transactions also involved the Densons, who purchased one lot and sold another in the subdivision. *Id.* Despite being unlicensed to act as a real estate broker, Holloman collected a broker's fee on both transactions—one from the Densons as sellers, and the other from the homeowner who sold his house to the Densons. *Id.* The case involved no allegation of wrongdoing or injury other than the bare fact that Holloman was unlicensed and therefore prohibited from collecting a fee. *See id.* at 420. The Waco court held that the Densons were entitled to recover the fee that they had paid to Holloman. *Id.* With respect to the purchase of the Densons' house, for which Holloman's fee had instead been paid by the seller, the court held that there was "no way the Densons could be found to be the aggrieved persons" when they had not been affected by the transaction. *Id.* They paid the price the seller asked for the house, and it was "no concern of theirs" whether the seller paid a commission. *Id.*

14

The present case is thus distinguishable from *Holloman* on the facts. If the appellants had neither alleged nor suffered an actual injury resulting from the unlicensed broker's RELA violations, then they would not become "aggrieved parties" by the mere fact that another party had paid a commission to the appellees. But this case is not so simple; the appellants in this case allege that they retained the appellees to act as their agents in a proposed real estate transaction, and that they were injured by the appellees' breaches of duties arising from that agreement.

The other case relied upon the majority is *Dohalick v. Moody National Bank*, a case involving the interpretation of a completely different regulatory scheme under the Texas Finance Code. 375 S.W.3d 537, 541 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Construing a different provision authorizing a recovery by an "aggrieved person" of fees paid to an unlicensed mortgage broker, the Fourteenth Court reasoned:

> Under the plain meaning of [Finance Code] section 156.406(b), the damages that an aggrieved person may recover are "damages in an amount that is not less than the amount of the fee or profit received and not to exceed three times the amount of the fee or profit received, as may be determined by the court." Act of May 25, 1999, 1999 Tex. Gen. Laws at 4346. An "aggrieved person" may recover these damages based upon the mortgage broker's receipt of "money, or the equivalent of money, as a fee or profit because of or in consequence of the person acting as a mortgage broker or loan officer without an active license or being exempt under [Chapter 156]." *Id*. Because this is the conduct by which the claimant is aggrieved, we conclude that to be an aggrieved person under section 156.406(b), the claimant must have paid all or part of the fee or profit to the unlicensed mortgage broker or loan officer.

*Id.* at 541. The court acknowledged that its interpretation of "aggrieved person" in that case was dependent on context, including "the action through which the person is aggrieved and the remedy provided to the person aggrieved." *Id*. at 542. The *Dohalick* court did not address any broader regulatory considerations under the Finance Code which may or may not have influenced that court's conclusion about whether a claimant bank could qualify as an "aggrieved party" when it alleged that an unlicensed mortgage broker fraudulently induced the bank to advance funds that the borrower then used to pay the broker's fee. *See id.* at 539. Rather than deciding an issue under the Finance Code that is not presented by this appeal in order to justify relying upon *Dohalick* as a potentially persuasive authority to support the majority's interpretation of Occupations Code section 1101.754, I would instead conclude that the different regulatory context of the RELA distinguishes the *Dohalick* case and justifies a different interpretation in this case.

## Conclusion

The Real Estate License Act private right of action must be interpreted in light of the full scope of its statutory and regulatory context. That context compels the conclusion that the appellants alleged a direct injury of the nature that the RELA is intended to prevent. They alleged that Bassoe acted on their behalf as broker when they attempted to negotiate the purchase of real estate as part of the purchase of the Pride assets. Liberally construed, the petition alleged numerous

16

violations of the RELA and its implementing regulations.  Had the RELA and its regulations been followed, appellants never may have engaged the appellees as agents because they had no license to act as a broker, and if Bassoe had acted in accordance with RELA regulations, none of the subsequent factual background of this dispute may have occurred.

The appellants are part of the class of persons intended to be protected by the RELA regulatory scheme.  Their injury allegedly resulted from RELA violations.  Accordingly, from the perspective of the RELA's legislative purpose of protecting the public in its dealings with real estate agents, the appellants are "aggrieved persons," entitled to pursue the private cause of action created under the RELA.  Accordingly, I concur only in the result without joining the opinion of the court.

Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.

Justice Massengale, concurring.

17